[No. G002400. Fourth Dist., Div. Three. June 23, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
BILLY GREENWOOD et al., Defendants and Respondents.

## COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Michael J. Pear, Deputy District Attorneys, for Plaintiff and Appellant.

Garey & Bonner, Michael Ian Garey, Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, Richard Aronson and Richard Schwartzberg, Deputy Public Defenders, for Defendants and Respondents.

## OPINION

WALLIN, J.—In 1971 the California Supreme Court held that a warrantless search of trash barrels left for routine collection violated the Fourth Amendment. (*People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262].) The prosecution argues the *Krivda* holding is erroneous and directly contradicts the majority of our federal circuit courts and other state courts which have ruled on this question. We must determine whether *Krivda* is binding precedent.

Billy Greenwood and Dyanne Van Houten were charged with felony narcotics possession offenses after contraband was twice discovered in Greenwood's home during the execution of two different search warrants in 1984. Both warrant affidavits included incriminating information obtained from warrantless searches and seizures of trash Greenwood left for collection at the curb. While the preliminary hearing magistrate upheld each warrant, the superior court disagreed and granted Greenwood's and Van Houten's motion to set aside the information (Pen. Code, § 995), concluding their motion to suppress evidence (Pen. Code, § 1538.5) seized pursuant to the warrants should have been granted at the preliminary hearing. The prosecution appeals.

In early February 1984, a federal narcotics agent from the Drug Enforcement Administration (DEA) contacted Laguna Beach Police Investigator Jenny Stracner. The agent informed Stracner that a suspect in custody in Nevada had told him that a large U-Haul truck full of drugs was en route to 1575 Fayette Place, Laguna Beach. Greenwood lived at that address. The agent and Stracner searched for the truck, but were unable to find it.

Later in February, a neighbor of Greenwood's telephoned Stracner to complain about heavy vehicular traffic late at night and early in the morning in front of Greenwood's house. The caller said people in the cars went into Greenwood's house but usually stayed only a few minutes. She also told Stracner that a large U-Haul truck had been parked in front of the house for four days.

On February 14, 1984, Stracner conducted a surveillance of Greenwood's house between 11 p.m. and 2:30 a.m., observing four vehicles arrive and depart at separate times. The next day, Stracner and another officer watched again, from 11 p.m. to 2 a.m., observing four different vehicles arrive and depart at separate times. No vehicle stayed longer than 10 minutes.

On February 23, 1984, the same neighbor told Stracner that a large Jartan truck was parked in front of Greenwood's house. Stracner contacted an investigator from the county sheriff's department, who went to the location with a dog trained to detect narcotics. A canine sniff-search yielded negative results. Later the same day, Stracner and Investigator Jimenez followed the Jartan truck to a residence in Newport Beach, which Stracner learned had previously been under investigation as a narcotics trafficking location.

In February, Stracner began to monitor and search the trash set out for collection in front of Greenwood's house. On April 6, 1984, at 6 a.m., Stracner drove past the house and observed a man put some trash out in front. Stracner told the trash collector that she wanted the trash. The trash collector cleaned his truck bin of other refuse and collected Greenwood's trash. The collector then gave it to Stracner. When Stracner searched it, she found evidence of drug trafficking.

The same day, Stracner obtained a search warrant for Greenwood's home, described as a two-story house with a detached guesthouse. The affidavit in support of the warrant outlined the above facts, including the results of the warrantless trash can search, in detail.

That evening Stracner and other police officers executed the warrant. As the officers approached Greenwood's home, they could see Greenwood, Van Houten, and another woman inside through the glass front doors. The officers

knocked, announced their purpose, and demanded entry. Greenwood ran upstairs and one of the women ran out of sight. After repeating the announcement and getting no response, the officers forced entry. A substantial quantity of cocaine was seized in the ensuing search and all three occupants were arrested. Each posted bail.

Subsequently, Stracner told Investigator Rahaeuser the details of the investigation and arrests. Thereafter, the same neighbor of Greenwood's who had spoken to Stracner communicated directly with Rahaeuser. On three separate occasions between April 16 and May 3, the neighbor told Rahaeuser about continuing heavy late-night vehicle traffic at Greenwood's house. On May 3, yet another police officer, Officer Ishmael, was at Greenwood's house in response to an unrelated disturbance complaint. Ishmael spoke with a woman at the house who seemed very nervous. She only opened the door enough to step out, closing it behind her. While she spoke to Ishmael, several persons peeked out from behind curtains. Ishmael explained all of this to Rahaeuser.

On May 4, Rahaeuser drove by Greenwood's house and observed a man put more trash out for collection. Rahaeuser took possession of Greenwood's trash from the official trash collector in the same manner as Stracner had done previously. Again, Greenwood's trash contained evidence of drug trafficking. On May 9, Rahaeuser obtained another search warrant for Greenwood's house. He executed it three days later, finding more drugs, and more evidence of drug trafficking. Greenwood was again arrested.

## I

Each warrant is dependent on the information from the two trash searches. In other words, if the fruits of the trash searches are excised from the warrant affidavits, those affidavits lack probable cause to search because there was no information supporting a reasonable conclusion narcotics would be found in Greenwood's house at that time. (*Raymond* v. *Superior Court* (1971) 19 Cal.App.3d 321, 327 [96 Cal.Rptr. 678].) Without the evidence of current trafficking found in the trash, the remaining information in the warrant affidavits was stale and fell short of establishing probable cause to search. (See *Sgro* v. *United States* (1932) 287 U.S. 206 [77 L.Ed. 260, 53 S.Ct. 138, 85 A.L.R. 108]; *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387 [107 Cal.Rptr. 483, 508 P.2d 1131]; *Hemler* v. *Superior Court* (1975) 44 Cal.App.3d 430 [118 Cal.Rptr. 564].)

## II

*People* v. *Krivda, supra,* 5 Cal.3d 357 held that warrantless trash searches are illegal because the owner maintains an expectation of privacy

even though he has set the trash out for collection. Under *Krivda,* a trash can placed in front of an accused's house for collection is not abandoned property. Thus, the court prohibited the "practice whereby our citizens' trash cans could be made the subject of police inspection without the protection of applying for and securing a search warrant." *(Id.,* at p. 367.)

Subsequent to *Krivda* and prior to the offenses charged here, California enacted Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), and eliminated an accused's right to suppress evidence seized in violation of the California, but not the federal, Constitution. (See *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus, the first question is whether *Krivda* was based on the federal or state Constitution. This same question was posed to the *Krivda* court by the United States Supreme Court in response to a petition for writ of certiorari. On remand, the California Supreme Court expressly stated its holding invalidating warrantless trash searches was based on both the Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution. *(People* v. *Krivda* (1973) 8 Cal.3d 623, 624 [105 Cal.Rptr. 521, 504 P.2d 457].)

Under the doctrine of stare decisis, we are bound by the California Supreme Court's interpretation of the Fourth Amendment in *Krivda (Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), unless the United States Supreme Court has decided the question differently. *(People* v. *Rooney* (1985) 175 Cal.App.3d 634, 644 [221 Cal.Rptr. 49].) At oral argument, the prosecution agreed it had not and further agreed *Krivda* was binding on this court because of stare decisis. It urges *Krivda* needs reexamination, but concedes that reexamination must be undertaken by our state Supreme Court. It is not this court's place to question the pronouncements of our state Supreme Court. *(Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.)

We are convinced neither the trial court nor this court may reexamine the rule in *Krivda* which declares warrantless trash searches illegal. Indeed, the only other published decision on this question reached the same result. *(People* v. *Rooney, supra,* 175 Cal.App.3d 634, 644.) And the petitions for review in that case were denied. ■ While ordinarily our state Supreme Court's denial of review "is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of [the Supreme Court] [citations], it does not follow that such a denial is without significance as to [the Supreme Court's] views [citations]." *(DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; see also *McGlothlen* v. *Department of Motor Vehicles* (1977)

71 Cal.App.3d 1005, 1017 [140 Cal.Rptr. 168]; *Phillips* v. *Bartolomie* (1975) 46 Cal.App.3d 346, 351 [121 Cal.Rptr. 56].)


██ Despite holdings to the contrary in our federal courts, this court is bound by *Krivda* unless or until the United States Supreme Court addresses the same question or our own Supreme Court overrules *Krivda*. (*People* v. *Neer* (1986) 177 Cal.App.3d 991 [223 Cal.Rptr. 555].) The warrantless trash searches here were illegal and the warrants based on them should have been quashed. (*Raymond* v. *Superior Court, supra,* 19 Cal.App.3d at p. 327.)


## III


██ The prosecution also challenges Van Houten's standing to suppress evidence, because she did not make a showing establishing an expectation of privacy in Greenwood's trash. Preliminarily, we note Van Houten was only charged with possession offenses relating to narcotics found in her purse, which was in Greenwood's home. Undeniably, the record establishes her standing to challenge the search of her purse. (See *United States* v. *Salvucci* (1980) 448 U.S. 83 [65 L.Ed.2d 619, 100 S.Ct. 2547].) That search was predicated on the warrant for Greenwood's house, where Van Houten probably also had an expectation of privacy due to her physical presence at the time the search warrant was executed. In any event, the expectation of privacy question relates to her purse. We would not require a separate showing of standing as to Greenwood's trash to challenge the purse search.


Moreover, had the prosecution raised the standing question during the evidentiary hearing in municipal court, Van Houten may well have established an expectation of privacy in Greenwood's trash. The prosecution's failure to challenge her standing there constitutes a waiver of the issue here. (*Steagald* v. *United States* (1981) 451 U.S. 204, 208-209 [68 L.Ed.2d 38, 43-44, 101 S.Ct. 1642].)


In light of our required allegiance to *Krivda*, none of the other issues raised by the parties need be discussed. The motion to suppress evidence should have been granted at the preliminary hearing. The superior court judge correctly ruled that error required he set aside the information as to both Greenwood and Van Houten.

The judgment is affirmed.

Trotter, P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 28, 1986. Lucas, J., and Panelli, J., were of the opinion that the petition should be granted.