[No. E005997. Fourth Dist., Div. Two. July 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD LEE BREAULT, Defendant and Appellant.

**COUNSEL**

Montie M. Reynolds, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jay M. Bloom and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DABNEY, Acting P. J.**—A jury found Ronald Lee Breault guilty in count I of transportation of methamphetamine (Health & Saf. Code, § 11379) and in count IV of cultivation of marijuana (Health & Saf. Code, § 11358). The jury acquitted Breault in count II of possession for sale of methamphetamine (Health & Saf. Code, § 11378) and in count III of possession of marijuana (Health & Saf. Code, § 11357). The trial court sentenced Breault to three years for count I and to a concurrent term of two years for count IV.

On appeal, Breault contends that the trial court erred in denying his motion to suppress evidence and abused its discretion in failing to sever counts I, II, and III from count IV; that his admissions were coerced and should have been excluded; that the evidence was insufficient to support his convictions; and that his conviction on count I should be set aside because it is irreconcilable with his acquittal on count III. Appellate counsel raises additional contentions in a petition for rehearing.

## FACTS

*Count IV.* On November 2, 1987, Deputy Sawicki went to Breault's house to take Emily P. into protective custody under Welfare and Institutions Code section 300. Emily, a juvenile who had been staying at Breault's house, was pregnant and had not received proper medical attention. Sawicki told Emily he would take her to the Hemet sheriff's station. She asked to get her things, and Sawicki accompanied her into the house. Emily walked through the bathroom into another room. Sawicki followed her into the bathroom and saw four marijuana plants growing in plastic pots in the bathtub. Emily told Sawicki that Breault had been watering the plants for someone else. Sawicki took the plants into evidence. That evening, other deputies went to Breault's house, searched the house and asked Breault about the plants. Breault admitted they were his.

*Counts I - III.* On November 5, 1987, Deputy Koepp was driving in a remote rural area when a pickup truck passed him going in the opposite direction. Koepp made a U-turn and followed the pickup. The passenger in the pickup stuck his right arm out the window and tossed three baggies into some bushes by the roadside. The pickup accelerated from 15 or 20 miles per hour to 55 or 60 miles per hour. Koepp called for a backup and then stopped the pickup. Breault was driving, and Koepp recognized the passenger as Manford Nickerson, who had several outstanding warrants and was wanted for narcotics violations. Koepp noticed an odor of acetone and ether coming from the pickup. From his training and experience, he associated the odor with freshly manufactured methamphetamine. Koepp retrieved the three baggies that had been tossed from the pickup. One contained marijuana; the others contained methamphetamine which appeared fresh, in that it was still damp and smelled of solvents.

## DISCUSSION

*Denial of Suppression Motion.* ■ Breault first contends that the trial court erred in denying Breault's motion to suppress the evidence of the marijuana plants. Breault argues that Sawicki had no right to follow Emily into the house, and the seizure of the marijuana without a warrant was therefore illegal.

■ Since the enactment of article I, section 28, subdivision (d) of the California Constitution, federal constitutional law governs challenges to the admissibility of evidence when complaints about police searches and seizures are raised. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-890 [210 Cal.Rptr. 631, 694 P.2d 744].) ■ Under the "plain view" exception to the Fourth Amendment warrant requirement, a law enforcement officer

may seize incriminating evidence or contraband which he discovers in a place where he has a right to be. (*Washington* v. *Chrisman* (1982) 455 U.S. 1, 5-6 [70 L.Ed.2d 778, 784-785 102 S.Ct. 812].) In *Chrisman,* an officer placed the defendant's roommate, Overdahl, under lawful arrest. Overdahl requested permission to return to his room to obtain his identification. The officer followed Overdahl, and from the doorway, was able to see contraband. The defendant challenged the seizure of the contraband as the product of an unlawful search. However, the court ruled, "The officer had a right to remain literally at Overdahl's elbow at all times; nothing in the Fourth Amendment is to the contrary." (*Ibid.*) Here, because Sawicki took Emily into custody lawfully, (Welf. & Inst. Code, § 300), he was entitled to keep her in his sight. Anything he observed while doing so is admissible into evidence. (*Chrisman, supra*, 455 U.S. at p. 6 [70 L.Ed.2d at pp. 784-785].)

Breault attempts to distinguish *Chrisman* on several grounds. First, he argues that Sawicki was not in Emily's presence when he spotted the marijuana plants. Emily had walked into a bedroom, and Sawicki had not followed her. In *Chrisman,* the defendant argued that the officer had remained in the doorway rather than follow Overdahl into his room, and that the officer was thus precluded from entering the room to seize contraband visible from the doorway. The court noted, "It is of no legal significance whether the officer was in the room, on the threshold, or in the hallway, since he had a right to be in any of these places as an incident of a valid arrest." (*Chrisman, supra*, 455 U.S. at p. 8 [70 L.Ed.2d at p. 786].) Here, likewise, the deputy had a right to follow Emily into the bathroom, and anything he saw from his lawful vantage point was properly seized.

Second, Breault argues that Emily, unlike Overdahl, was not under arrest, but was merely in protective custody. In our view, this is a distinction without a difference. (See, e.g., *United States* v. *Chase* (9th Cir. 1982) 692 F.2d 69, 71, in which the court stated that officers had properly accompanied the defendant when he requested to go back into his house after he was lawfully detained.)

Finally, Breault argues that federal law requires a showing of exigent circumstances. Here, the trial court ruled that the deputy's reasons for entering the house with Emily were irrelevant. The *Chrisman* court rejected the contention that the officer was not entitled to accompany Overdahl into his room "absent a showing that such 'intervention' was required by 'exigent circumstances.'" (*Chrisman, supra*, 455 U.S. at p. 6 [70 L.Ed.2d at p. 785].) The court explained, "The absence of an affirmative indication that an arrested person might have a weapon available or might attempt to escape does not diminish the arresting officer's authority to maintain

custody over the arrested person. [Citations.] Nor is that authority altered by the nature of the offense for which the arrest was made.

"Every arrest must be presumed to present a risk of danger to the arresting officer. [Citation.] There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious. Although the [reviewing court] found little likelihood that Overdahl could escape from his dormitory room, an arresting officer's custodial authority over an arrested person does not depend upon a reviewing court's after-the-fact assessment of the particular arrest situation. [Citations.]" (*Chrisman, supra,* 455 U.S. at pp. 6-7 [70 L.Ed.2d at p. 785].)

*Chrisman* does not require a showing of exigent circumstances. Sawicki lawfully accompanied Emily into the house and properly seized the marijuana plants which came into his view when he did so. The court did not err in denying the motion to suppress.

*Denial of Motion for Severance.* ▮ Breault argues that the trial court abused its discretion in denying his motion to sever trial on count IV from that on the remaining counts. Breault concedes that offenses of the same class, such as the crimes charged in this case, may be joined for trial under Penal Code section 954. He argues, however, that the court erred in ruling that there was no potential prejudice. He asserts that the jury could infer from the various drug offenses charged that he was a major drug dealer involved in many types of illicit substances and therefore had a propensity to commit the crimes charged.

Penal Code section 954 gives the trial court discretion to ". . . order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." ▮ The joinder laws must not be used to deny a defendant his right to due process and a fair trial. (*Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699].) However, a defendant must make a clear showing of prejudice to establish an abuse of discretion. (*Id.,* at p. 447.) Determination of a severance issue depends on the circumstances of each case.

The court must first consider whether any of the evidence pertinent to one case would have been admissible in a severed trial. Here, the trial court found that none of the evidence would have been cross-admissible. The absence of cross-admissibility does not alone prove prejudice, however. (*Williams, supra,* 36 Cal.3d at p. 451 & fn. 9.) The court also must consider

whether any of the crimes charged were highly inflammatory, whether "a 'weak' case has been joined with a 'strong' case . . . so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all; and [whether] any one of the charges carries the death penalty. [Citations.]" *(People v. Balderas* (1985) 41 Cal.3d 144, 173 [222 Cal.Rptr. 184, 711 P.2d 480].) Finally, the trial court must weigh the benefits of joinder, including the conservation of judicial resources and public funds, against the potential prejudice.

Courts have found serious offenses such as child molestation *(Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 138 [172 Cal.Rptr. 86]) or "gang warfare" *(Williams, supra,* 36 Cal.3d at pp. 452-453) to be inflammatory. However, in *Balderas,* the court found that the robberies and sex crimes against two victims and the homicide of another were not inflammatory enough to require severance because they "were not particularly brutal, repulsive, or sensational." *(Balderas, supra,* 41 Cal.3d at p. 174.) Charges of possession and transportation of narcotics are not inherently inflammatory.

■ Even if the evidence of possession of marijuana plants was stronger than the evidence to support the other counts, Breault did not demonstrate sufficient prejudice to outweigh the benefits of a consolidated trial.

*Extrajudicial Admissions.* ■ Breault next asserts that his admission that he owned the marijuana plants found in his bathroom should have been excluded as the product of police coercion and because no *Miranda* warnings were given. ■ Under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974], "the prosecution may not use statements . . . stemming from custodial interrogation . . . unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *(Id.,* at p. 444 [16 L.Ed.2d at p. 706].) "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *(Rhode Island v. Innis* (1980) 446 U.S. 291, 300 [64 L.Ed.2d 297, 307-308, 100 S.Ct. 1682].) Custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived. *(People v. Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].) The test of custody is an objective one: "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *(Berkemer v. McCarty* (1984) 468 U.S. 420, 442 [82 L.Ed.2d 317, 336, 104 S.Ct. 3138].) Objective indicia of custody for *Miranda* purposes include formal arrest, or absent formal arrest, (1) the length of detention, (2) the location, (3) the ratio of officers to suspects, and (4) the demeanor of the officer, including the nature

of the questioning. (*People* v. *Herdan* (1974) 42 Cal.App.3d 300, 306-307 [116 Cal.Rptr. 641].)

■ The trial court's decision to admit Breault's statements may not be set aside on appeal unless it is " 'palpably erroneous,' i.e., unsupported by substantial evidence." (*People* v. *Salinas* (1982) 131 Cal.App.3d 925, 933 [182 Cal.Rptr. 683].) When the testimony is conflicting, this court accepts the version of facts most favorable to the People to the extent it is supported by the record. (*Ibid.*)

■ Breault submitted his motion to exclude his statement on the basis of the preliminary hearing transcript. Our review of that record shows that all of the *Herdan* factors indicate that Breault was not in custody and no *Miranda* warning was required. Breault was explicitly told that he was not under arrest.[1] He was not handcuffed or physically restrained. The questioning took place in Breault's own home. Only two officers came to the house, and four other adults and a small child were present besides Breault. The officer merely asked Breault who resided at the house and questioned him about the ownership of the marijuana plants. The trial court did not err in allowing evidence of Breault's admission of ownership.

■ Breault also contends that his admission was coerced because he admitted ownership only after the officer threatened to take Breault's girlfriend and child to the sheriff's station. Breault failed to raise this contention in the trial court, and the issue is deemed waived. (*People* v. *Milner* (1988) 45 Cal.3d 227, 236-237 [246 Cal.Rptr. 713, 753 P.2d 669].) However, Breault asserts that the trial court cut off discussion about the deputies' unlawful conduct, preventing him from raising the issue. The record does not support this contention. The officer who questioned Breault did not testify on direct or cross-examination about how long the officers spent in the house before questioning Breault or whether any inducements were made to persuade him to admit ownership of the marijuana plants. Throne testified that he did not threaten Breault. *After defense counsel terminated cross-examination of Throne,* the prosecutor requested a sidebar conference, apparently because he wished to elicit testimony that one reason the officers searched the house was to look for Nickerson, a fugitive.

The entire focus of the sidebar conversation was on the officers' reasons for searching the house.[2] The issue of the voluntariness of Breault's admissions was not raised at trial, and cannot be raised on appeal.

---

[1] Even after admitting ownership of the marijuana plants, he was not taken into custody until three days later.

[2] The court told the prosecutor, "I think you're being overly sensitive. He went there for follow-up investigation, and I think there is nothing inappropriate with him taking a look

*Sufficiency of Evidence.* ▨ Breault contends that the evidence was insufficient to establish that he knew of the existence of either the marijuana plants at his house or the methamphetamine which Nickerson tossed from his pickup. ▨ In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, "the court must review the whole record *in the light most favorable to the judgment below* to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], italics added.)

▨ Emily testified that Breault was watering the marijuana plants for someone else. She also testified that Breault's girlfriend had once become angry because she did not want illegal drugs in her home and had pulled the plants out of their pots. Breault then retrieved the plants and repotted them. Breault admitted that the marijuana plants were his. The evidence amply supports the finding that Breault knew the marijuana plants were in his house. (*People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].)

Sufficient evidence also supports Breault's conviction for transporting methamphetamine. Deputy Koepp testified that Breault's truck smelled of solvents associated with manufacture of methamphetamine. The baggie of methamphetamine also emitted an ether smell. The jury could reasonably infer that from the distinctive odor, Breault knew of the presence of the methamphetamine in his truck.

*Inconsistency of Verdicts.* ▨ Counts I (transporting methamphetamine) and III (possessing marijuana) stemmed from the incident in which Deputy Koepp retrieved baggies which Nickerson had tossed from the truck Breault was driving. Breault urges that his conviction on count I was irreconcilable with his acquittal on count III. He contends that the jury could not properly have found that he had the requisite knowledge to be convicted of count I when on the same evidence the jury found that he did not have the requisite knowledge as to count III, and that when two

through the house during the course of the investigation." The court pointed out the marginal relevance of evidence that the officers had gone to the house to look for Nickerson, because Emily had already testified that Nickerson spent a lot of time there. The court continued, "I don't think there's any indication this officer has been acting in bad faith and perhaps my perception is different. . . . I don't think that's negative connotation there. There are about five people in the house, they have to check the house for safety. I wouldn't expect the defense attorneys to argue that. I don't think you had thought of that, had you?" Defense counsel responded, "No, but thank you, good point." The court then said, "If it does happen, I would stop that argument."

findings of fact are in irreconcilable conflict, the one less favorable to the defendant must be set aside. (*People* v. *Nova* (1936) 12 Cal.App.2d 525, 527 [55 P.2d 915].)

The factor which distinguished the two counts was the odor of solvents, associated with freshly manufactured methamphetamine, in Breault's truck. The jury could conclude that Breault was aware of the presence of the methamphetamine through his sense of smell. The two findings of fact are not irreconcilable.

### CONTENTIONS IN PETITION FOR REHEARING

In strong language in a petition for rehearing, defendant's counsel asserts that we failed to consider relevant facts and important arguments and put misplaced reliance on the cases we cited. Our careful review of the record assures us that no rehearing is justified. Ordinarily we would simply deny the petition for rehearing summarily. However, the seriousness of the points raised compels us to respond. It also appears that appellate counsel has neglected to review the entire record and demonstrates a fundamental misunderstanding of the standards of deference to the fact finder which govern our review. We therefore modify our opinion solely to address the reasons for our rulings.

*Contention That Emily P. Was Not Taken Into Protective Custody Under Welfare and Institutions Code Section 300.*

Counsel claims that the court erred in relying on Welfare and Institutions Code section 300 as the basis for concluding that Deputy Sawicki had properly taken Emily P. into custody. Counsel states, "Neither the court, nor Emily's mother, had filed any petition or taken any other action to invoke § 300. During the trial, no evidence was offered by the prosecution to indicate that Emily was subject to arrest under § 300. In fact, Deputy Sawicki testified that his intent was to 'contact' Emily in the course of his 'follow-up' to her mother's request."

Since counsel has challenged the admission of evidence, the proper focus for review is on the showing made at the motion to suppress. Counsel has ignored the explicit testimony at the hearing on Breault's Penal Code section 1538.5 motion which supports the court's reliance on Welfare and Institutions Code section 300. At that hearing, the following exchange took place between the prosecutor and Deputy Sawicki:

"Q. Why were you there in the Aguanga area?

"A. I was there at the Lazy K Campgrounds to attempt to contact an Emily [P.] who was being sought in referrence [sic] to a 300 Welfare and Institution Code case.

"Q. Was it your intentions to take her into custody?

"A. Yes, sir."

The officer further testified that when he contacted Emily P., he advised her that he was there because "a report had been made by her mother in reference to the 300 Welfare Institutions [sic] Code case. And that she would have to come with me to the station in Hemet."

On cross-examination, the following exchange took place:

"Q. Now, you were there to pick up Emily [P.] because she was a run away; correct?

"A. No, ma'am.

"Q. She was 301?

"A. Falls under the 300 Section, yes, ma'am.

"Q. And so what were you there to go and pick her up for?

"A. The basis of the 300 case was that she was pregnant at the time and she was not seeking proper prenatal care. And her parents could not provide that care. And so therefore it fell under the 300 Section. We could take her under custody. She was placed in a crisis home."

Counsel next contends that the manner in which Emily P. was taken into custody did not satisfy *Chrisman.* This point was discussed at length, *ante,* at pages 131 through 133, and we adhere to the views therein.

Counsel further argues that nothing in the record indicates that the allegations which brought Emily P. under Welfare and Institutions Code section 300 were true. However, trial counsel did not challenge the officer's probable cause to take Emily P. into custody. Moreover, the standard by which the officer's conduct is measured is whether he had probable cause for his actions, not whether the underlying allegations could be proved in court. The portions of the record quoted above amply demonstrate that the officer's conduct was proper.

*Contention That This Court Put Misguided Reliance on Chase.*[3]

 Counsel asserts that this court erroneously stated that the *Chase* court *held* that officers properly accompanied the defendant into his house after he was lawfully detained. In fact, our citation to *Chase* was preceded by the signal, "See, e.g." The California Style Manual (3d ed. 1986) section 101 indicates that the "see, e.g." signal preceding a case citation indicates that the author is citing the case as an example. The "see" signal is used to indicate that the author refers to dicta in a case. (*Ibid.*) Furthermore, our citation indicated that the *Chase* court *stated* that it was proper for officers to accompany a detained suspect into his house. Nothing in our opinion suggests that we mistook dicta in *Chase* for a holding.

*Reliance on Balderas Opinion.*

In response to our holding that the trial court did not abuse its discretion in refusing to sever trial on various counts, counsel merely reargues the issue. Nothing in his arguments persuades us that we have misinterpreted or misapplied relevant case law.

*Evidence of Breault's Extrajudicial Statements.*

Counsel next argues that our opinion omits "numerous facts alleged in [appellant's] briefs (and supported by testimony at trial) establishing the coercive nature of [Breault's] interrogation (and uncontradicted in respondent's brief)." As we noted above, Breault originally moved before trial to exclude his extrajudicial statement that the marijuana plants in his bathroom belonged to him. The court denied the motion after reviewing the preliminary hearing transcript.[4] Trial counsel stated that she "would ask the Court's permission to reserve the right to bring the issue up again. I did want to have a hearing with regard to that because I don't think that that statement should be admitted." The court later stated, "If you'd like to develop a record, let's say there are some questions that you'd be wanting to ask the officer to establish your record for the admissibility of the statement that are really not relevant to presentation before the jury, we can have a delayed 402 hearing so that you can make a record and get an offer of proof before his testimony on the day he is to testify. [¶] In other words, we'll have the jury come back a half hour later and you can take Officer Throne on voir dire as it relates just to the Miranda advisement, and we'll do that

[3] *Chase, supra,* 692 F.2d 69.
[4] Counsel asserts that the motion to suppress the statement was submitted "on the basis of the whole record." This is not correct. At the time it ruled, the court had before it only the preliminary hearing transcript. The motion was never renewed, despite the court's invitation to do so.

procedure, if that's all right with you, so at least the record will be complete on appeal." Trial counsel never requested such a hearing, and Officer Throne testified to Breault's statement without objection.

■ It is fundamental that if a defendant fails to raise an appropriate objection in the trial court, error is deemed waived. (See 6 Witkin, Cal. Criminal Law (2d ed. 1989) § 3289, pp. 4068-4070.) Here, the trial court denied Breault's pretrial motion to suppress his statement, and defense counsel never renewed the motion to exclude, objected, or moved to strike when evidence of Breault's statement was admitted. We concluded that the coercion issue was waived, and thus, the opinion did not discuss Breault's self-serving trial testimony on the search and interrogation.

Counsel again argues that the issue was sufficiently raised at trial because the trial court informed the parties that if the conduct was challenged, "I would stop that argument." We have discussed this statement at length *in the context in which it was made at trial* (*ante,* at pp. 135-136, fn. 2) and conclude that it did not excuse defense counsel from objecting.

*Contention That Opinion Fails to Consider Important Evidence.*

■ Counsel repeats his argument that the evidence to convict Breault of cultivation of marijuana was insufficient. He asserts, "The only evidence offered to prove that appellant knew there were marijuana plants in his home during his absence was the testimony of Emily," and that her testimony was not credible. Again, as he did in his appellate briefs, counsel ignores the fact that Breault *admitted* that the plants were his. Regardless of Emily P.'s testimony, this alone was a sufficient basis for his conviction.

Further, the argument that the evidence was insufficient demonstrates a lack of understanding of this court's role in reviewing the sufficiency of evidence. Myriad appellate opinions recite that in considering the sufficiency of the evidence, we view the record in the light most favorable to the judgment. ■ We quote from *People* v. *Ozene* (1972) 27 Cal.App.3d 905, 910 [104 Cal.Rptr. 170]: "It is blackletter law that any conflict or contradiction in the evidence, or any inconsistency in the testimony of witnesses must be resolved by the trier of fact who is the sole judge of the credibility of the witnesses. It is well settled in California that one witness, if believed by the jury, is sufficient to sustain a verdict. To warrant the rejection by a reviewing court of statements given by a witness who has been believed by the trial court or the jury, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral

sense of the court; it must be inherently improbable and such inherent improbability must plainly appear. [Citations.]"

 Counsel next argues that the record contains no evidence that Breault recognized the odor of solvents associated with freshly manufactured methamphetamine and that there was no evidence that the odor was present in the truck.

This is simply not so. Deputy Koepp testified that he smelled "a moderate smell of acetone"[5] about the baggie of methamphetamine he picked up after it had been thrown out the pickup window. The officer further testified that he smelled "a light to moderate smell of an ether type smell about [Nickerson's] person in the general area of the truck." The testimony continued on cross-examination:

"Q. Now, this ether smell that you smelled at the time that you made the stop, . . . was that a smell . . . that you smelled on that Manford Nickerson?

"A. I think I specifically smelled it on his clothing and the general area of the truck."

Ample evidence, which we originally omitted in the interest of brevity (although counsel should have been aware of it), supports the inference that Breault was familiar with the odors of freshly manufactured methamphetamine. First, the evidence showed Breault's general familiarity with methamphetamine. Emily P. testified that she had often seen Breault sell methamphetamine from his house and that people frequently came there to use it.

Deputy Koepp testified that on November 5, 1987, he had visited an isolated, uninhabited house in the desert. He noted a moderate smell of ether in the house and saw a chalky white residue and purple sludge on the floor. From his experience, he associated the smell and the residues with the recent manufacture of methamphetamine. Two weeks earlier, he had seen a gas-operated generator[6] at the house and an El Camino parked there with engine parts missing. On November 5, both the vehicle and the generator

---

[5] The officer testified *in limine* that substance in the baggie emitted a strong odor. However, the jury did not hear such evidence, and accordingly, we delete the word "strong" from our discussion of the odor.

[6] The officer testified that the manufacture of methamphetamine requires an electric power source.

were gone. It had rained that morning, and fresh car tracks led away from the spot where the El Camino had been parked. From the car tracks, it appeared to Koepp that the El Camino had been towed away by another vehicle. Koepp followed the tracks and eventually came upon the El Camino parked on the side of the road. He was following tracks which led away from the El Camino when he saw Breault driving his pickup in the opposite direction. When Koepp stopped Breault's pickup, he saw a generator in its bed which he recognized as the one he had seen earlier at the suspected drug lab.

Koepp's observations at the suspected lab site indicated that methamphetamine had recently been manufactured there. Breault's passenger, Manfred Nickerson, was carrying freshly manufactured methamphetamine in the general vicinity of that house. Breault admitted that he had towed the El Camino earlier in the day. Several witnesses testified that Breault knew that Nickerson was involved with drugs and was wanted on outstanding warrants for drug offenses. The jury could easily have inferred that Breault knew that Nickerson had picked up the fresh methamphetamine at the abandoned house that day.

Finally, counsel argues that we erred in relying on the "sense of smell" theory because it was not advanced by the prosecution. Again, counsel has failed to consider the entire record. In fact, at trial, the court itself twice noted that Breault could have been aware of the presence of the methamphetamine from its smell. The prosecutor discussed the odor as the basis for Breault's knowledge both in closing argument and in argument on defense counsel's motion to dismiss. In final argument, *defense* counsel stated, "[A]s he indicated, there was this slight odor. [¶] Are you going to convict for transportations based on odor . . . ?" The verdict suggests that the jury followed defense counsel's own suggestion.

While we recognize appellate counsel's right and duty to point out errors of fact or law in our opinions, limited judicial resources are poorly spent in reviewing baseless allegations in petitions for rehearing. In our view, it is a serious matter to allege that a judicial tribunal has failed to discharge its responsibility, and counsel who makes such an allegation should be prepared to back it up. Here, counsel's own lack of familiarity with the record and with fundamental principles of appellate review led to unfounded assertions in the petition for rehearing. For this, we believe that counsel should be admonished. We urge appellate counsel to use particular care in reviewing the entire record before raising assertions such as those in the instant matter.