[No. E010412. Fourth Dist., Div. Two. Feb. 17, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ALLEN EASTMAN, Defendant and Appellant.

## COUNSEL

Philip A. Zywiciel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

DABNEY, J.—A jury convicted defendant and appellant Mark Allen Eastman of transportation of a controlled substance—in this case, methamphetamine. (Health & Saf. Code, § 11379, subd. (a).)[1] The jury returned a verdict of not guilty on a charge of possessing the methamphetamine for sale. (§ 11378.) Appellant was placed on probation and ordered to serve 210 days in the county jail, with credit for 18 days served.

On appeal, Eastman asserts that the jury was incorrectly instructed concerning the meaning of the word "transportation," as used in section 11379, in that the term must be construed to imply an intent, at the end of the transportation, to transfer possession. He also asserts that the evidence was not sufficient to support the finding that he personally possessed and transported the contraband. Finally, he argues that he should be credited with an appropriate amount of presentence conduct credit pursuant to Penal Code section 4019, subdivision (a)(2). We agree with the last contention, but otherwise affirm the judgment.

### STATEMENT OF FACTS

Deputy Timothy Smith stopped appellant for speeding about 12:30 a.m. Appellant was the only occupant of the vehicle, a late model red Chevrolet pickup truck.

While Deputy Smith was asking appellant for his license and car registration (appellant had no license), he noticed that appellant's right hand was out

---

[1]All subsequent statutory references are to the Health and Safety Code unless otherwise specified.

of sight underneath the seat, next to his right thigh; appellant was not, however, bent over. Appellant complied with the deputy's request to bring his hand into view.

Appellant then got out of the truck and Deputy Smith noticed a bulge under his clothing at the small of his back, towards which appellant was reaching. Deputy Smith ordered him to stop, and removed the object, which proved to be a buck knife with a four-inch blade.

Appellant acquiesced in the deputy's request to search the truck, remarking "It's not my truck. Sure, go ahead and search it." The deputy found a small white pill bottle directly under the seat in the area where appellant's hand had been briefly concealed. Inside the bottle were five baggies containing a white powder. Two were later tested by a criminalist, who testified that they contained, respectively, 2.84 and 1.58 grams of methamphetamine.

After Deputy Smith arrested appellant, appellant spontaneously stated "The speed's not mine. I use speed, but I didn't have any speed . . . ." He said that he had borrowed the truck from a friend; it was later found to be registered to one Barry Leon Norton. The deputy further testified that when he first approached appellant on the traffic stop, appellant appeared "extremely agitated and fidgety," far beyond that usual for a person stopped for a mere traffic violation.

Sergeant Harvey Lorett testified that he had stopped appellant—or otherwise "came in contact" with him—at approximately 2 a.m. two weeks before his arrest. At that time, appellant was driving a late model pickup truck which Sergeant Lorett recalled as being blue.[2] That truck was registered to Barry Norton.

There was testimony that the street value of the drugs in the vehicle ranged from $800 to $1,200.

Michael Gibbons testified for the defense, and stated that appellant and Barry Norton were friends of long standing, and lived together on and off. He described Norton's red pickup truck as virtually a "community vehicle," available for use not only by appellant but by anyone else sharing the apartment; indeed, he indicated that the keys were generally available for any of Norton's friends. He testified that up to 20 people used the truck at various times. He further testified that on the night of Eastman's arrest, he had met Eastman and Norton at a bowling alley about 11:30 p.m. The three left together, and appellant drove off in the red truck belonging to Norton.

---

[2]The discrepancy is not significant, as defendant admitted that he frequently used the truck; it was not seriously challenged that defendant was driving the same truck on each occasion.

Finally, Gibbons testified that Norton had disappeared—in fact, had jumped bail posted by Gibbons—and at that time his whereabouts were unknown.[3] Norton's unavailability was confirmed by a private investigator who had attempted to subpoena him.

Appellant testified in his own behalf. He testified that, after meeting Norton and Michael Gibbons at the bowling alley, Norton asked him to drive the truck home. He reiterated that the truck was available for use by Norton's friends, and stated that he drove it about once a week. He denied having made any gestures or reaching motions under the seat. He explained that he carried a knife to "humor" a friend who gave it to him (who was also at the bowling alley that night), and confirmed that he had consented to Deputy Smith's search of the car. He denied that he had said "I use speed, but that's not my speed," or words to that effect, to the deputy, and denied knowledge of the presence of the methamphetamine in the truck.

DISCUSSION

A.

The jury was instructed with CALJIC No. 12.02 (5th ed. 1989 rev.), which informed them generally that the elements of a violation of section 11379, subdivision (a), were 1) that a person transported a controlled substance, and 2) that the person had knowledge of the presence and the nature of the controlled substance. ■ Appellant, however, asserts that the trial court had a sua sponte duty to define the term "transport" or "transportation."

■ The trial court has no duty, in the absence of a request (the record reflects none here) to instruct on words in common usage. "When a term is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, an instruction as to its meaning is not required in the absence of a request." (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1314 [248 Cal.Rptr. 834, 756 P.2d 221].) Thus, "conspiracy" need not, as a rule, be defined (*Id.*, at pp. 1314-1315); nor need the court explain the meaning of a term such as "making friends," when used in the context of facilitating lewd conduct with a child. (*People* v. *Thompson* (1988) 205 Cal.App.3d 871, 883 [252 Cal.Rptr. 698].)

■ At first blush, "transport" and "transportation" appear to be words commonly understood and of a plain, nontechnical meaning. But appellant

---

[3]No objection was made to the gratuitous comment that Norton had jumped bail on an unspecified offense.

Defendant later testified that Norton had embezzled money from the business where he worked. Although this was stricken as hearsay, defendant was immediately allowed to explain that he knew of this because the owner of the business had told him.

argues that section 11379 *does* use the word "transport" in a technical sense, and that the statute excludes transportation which is incidental to personal use.[4] He recognizes that case law is against him, but urges us to reexamine the question.

In *People* v. *Rogers* (1971) 5 Cal.3d 129 [95 Cal.Rptr. 601, 486 P.2d 129], the court expressly rejected the position taken by appellant. "Nor can we agree with defendant's further contention that the offense of illegal transportation requires a specific intent to transport contraband for the purpose of sale or distribution, rather than personal use. . . . Had the Legislature sought to restrict the offense of transportation to situations involving sale or distribution, it could easily have so provided." (*Id.*, at pp. 134-135.)

■ As appellant concedes, we are customarily bound to follow the precedents of the Supreme Court. "Otherwise, the doctrine of stare decisis makes no sense. . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) ■ He insists, however, that the decision in *Rogers* must be disregarded because it rests on flawed reasoning, and that subsequent legislative changes indicate that it no longer represents the law.

We reject his first contention out of hand; the language of *Auto Equity Sales, Inc., supra,* makes it clear that we may not substitute our judgment and analysis of prior precedent and the legislative intent for that of the court which decided *Rogers.* Thus, in *People* v. *Greenwood* (1986) 182 Cal.App.3d 729, 734, [227 Cal.Rptr. 539][5] the court refused to depart from the existing state Supreme Court precedent on trash searches, commenting that ". . . reexamination must be undertaken by our state Supreme Court. It is not this court's place to question the pronouncements of our state Supreme Court." For this reason we do not consider further appellant's assault on the specific reasoning and cases cited by the *Rogers* court.[6]

Appellant's next argument is that subsequent legislation has invalidated the result in *Rogers.* Where an issue of law has been affected by later

[4]Defendant was acquitted of possession for sale, thus reflecting an implied finding that, if defendant personally possessed the methamphetamine, possession was for personal use.

[5]*Greenwood* was reversed on other grounds in *California* v. *Greenwood* (1988) 486 U.S. 35 [100 L.Ed.2d 30, 108 S.Ct. 1625].

[6]As Justice Gardner of this court remarked in his concurring opinion in *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 217 [163 Cal.Rptr. 445], criticizing a "whimsical" distinction governing the recoverability of damages for emotional distress, ". . . from my place in the judicial pecking order, I can do nothing but grumble about it."

We do not mean by this reference to reflect any discontent with *Rogers,* as will become evident in the course of this opinion.

legislation, the changes may lead the highest court of a jurisdiction to overrule an earlier decision. (See e.g., *People* v. *Valentine* (1946) 28 Cal.2d 121, 144 [169 P.2d 1], in which the court relied on the 1872 overhaul of penal law to support its rejection of earlier cases on the issue of provocation sufficient to reduce murder to manslaughter.) It is a closer question whether a lower court can rely on the legislation to authorize departure from precedent established by a higher court. In some cases, of course, the altered intent of the Legislature is so clear that the lower court cannot reasonably cling to precedents based on statutes which have been completely rewritten. (See *Lane & Pyron, Inc.* v. *Gibbs* (1968) 266 Cal.App.2d 61, 66 [71 Cal.Rptr. 817].) We will accept arguendo that we have the power to scrutinize the *Rogers* holding in light of later legislation, but, having done so, we conclude that no reason can be found for ignoring its authority.[7]

Appellant argues that *Rogers* is based upon the definition of "transport" given in former section 11012 which defined the word as including " 'conceal,' 'convey,'or 'carry'." (*People* v. *Rogers, supra,* 5 Cal.3d at p. 133.) As this definition was repealed (and not replaced) in 1972, appellant reasons that the legislature must have thereby rejected the construction of "transport" made in *Rogers,* and instead adopted the view of Justice Mosk, in dissent, that the offense of transportation included the factor of facilitating the sale or distribution of the contraband. (*Id.,* at p. 146.)

First, in our view, the citations of former section 11012 do not by any means form the foundation of the court's decision in *Rogers.* The court used the statutory definition of "transport" simply to refute defendant's assertion that, because he had been acquitted of possession of marijuana, he could not be convicted of transportation. In this context, the court referred to section 11012's triad of alternative activities which violated the transportation statutes to support its conclusion that possession was not an element of the

---

[7]That the power of a lower court in this respect is sharply limited is demonstrated by *People* v. *Savala* (1981) 116 Cal.App.3d 41 [171 Cal.Rptr. 882]. In that case, the court refused to abandon the principle of stare decisis where the Supreme Court's construction of a statute was based upon an analysis of legislative intent; although the Legislature promptly passed new legislation purporting to clarify its original intent in contradiction to the Supreme Court's holding, the *Savala* court felt constrained to follow the judicial precedent.

The rationale of *Savala* is based upon the principle that the Legislature, by subsequent acts or declarations, cannot relieve a lower court of its duty to follow the Supreme Court's binding holding on what the Legislature's intent at the time of original enactment actually was. The situation is different in a case like *Lane & Pyron, Inc.* v. *Gibbs, supra,* where a court is viewing announcements in prior precedent in light of later enactments which change the fundamental rules under which the earlier cases were decided.

The case at bar may be more similar to *Savala,* in that there has been no substantial intervening change in the actual penal statute construed in *Rogers* (§ 11531, transportation etc. of marijuana; now see § 11360); the language in the statute involved in this case, section 11379, tracks that of section 11360 and former section 11531.

crime of transportation. It noted, for example, that a defendant who aided his passenger in carrying, conveying, or concealing drugs in the passenger's sole possession would be guilty of the offense of transportation.

The court then referred to former section 11012 again, but in a manner not helpful to appellant here; it simply noted that nothing in "the word 'transport,' the defining terms 'carry,' 'convey,' or 'conceal,' nor section 11531 read in its entirety[8], suggests that the offense is limited to a particular purpose or purposes." (*Rogers, supra,* 5 Cal.3d at p. 134.) Thus, this "reliance" on section 11012 simply observed that its language did not support the argument that any specific intent was required; the deletion of the definition's expansive alternatives hardly compels the conclusion that the Legislature intended to affirmatively *create* such a new element of the offense. The disappearance of the statutory definition of "transport" leaves intact the *Rogers* comment that the Legislature knows how to require a specific intent when it chooses—as in establishing the crime of possession with intent to sell.

We find appellant's reliance upon cases such as *People* v. *Perkins* (1951) 37 Cal.2d 62 [230 P.2d 353], misplaced; this case does not involve the legislative *addition* of language plainly intended to change a judicial result based on an earlier version of a statute, but the *deletion* of redundant or tangentially relevant language unaccompanied by any apparent intention to substitute new requirements.

Finally, appellant is unable to point to anything in legislation since *Rogers* that would undercut the policy basis of the decision—that the transportation of contraband, even if possessed only for personal use, is properly punished more severely than simple possession because the act of transportation substantially increases the risks to the public. (5 Cal.3d at pp. 136-137.) Thus, a prohibition on the simple transportation of drugs affects the transporter's ability to make sales or purchases of contraband; it reduces the risks of traffic accidents due to drivers under the influence; and it arguably even reduces the frequency of personal drug use by discouraging users from carrying supplies in vehicles.[9] (*Ibid.*) We accept the continued vitality of the holding. Accordingly, there was no error in the instructions and the fact that

---

[8]As noted above, former section 11531 was essentially identical to section 11379 in its prohibitions against the transportation of contraband.

The Attorney General argues disingenuously that defendant is attacking a statute not at issue—that is, former section 11531. We have had no difficulty in following defendant's analogy from *Rogers* and former section 11531 to the provisions of the present section 11379.

[9]The court also noted that the Legislature might well have found that the most serious result of transporting contraband—the probability that drugs being transported would be sold or otherwise distributed—could only be effectively countered by severely punishing the act of

the jury found appellant not guilty of possessing the methamphetamine *for sale* is not relevant.

## B.

■ Appellant's next contention is that, even under the common meaning of "transportation," the evidence was insufficient to support the verdict. He argues correctly that his knowledge of the presence of the contraband is an element of the crime. (*People* v. *Breault* (1990) 223 Cal.App.3d 125, 136 [273 Cal.Rptr. 110].) He takes the position that one who shares access with others to a place in which contraband is found cannot, without more, be found the possessor. (See, e.g., *People* v. *Ingram* (1978) 87 Cal.App.3d 832, 837 [151 Cal.Rptr. 239].)

However, as discussed in *Rogers*, possession of the contraband is not an element of the crime of transportation. In this case, there was arguably sufficient evidence to show possession; there was unquestionably sufficient evidence to support a finding that Appellant was aware of the presence of the contraband. Appellant apparently had as much access to and control over the truck as anyone, including the owner. Although it is true, as he asserts, that he was never seen to bend over the area in which the contraband was found, he *was* seen reaching under the seat with his hand.[10] Deputy Smith felt that appellant was unusually agitated and nervous. It is true that appellant's statement disclaiming ownership, made to Deputy Smith, was essentially exculpatory; however, the admission that he did use methamphetamine was evidence which tended to link him with the drugs—or at least to suggest that he was aware that others used the truck to store drugs. Finally, the jury was entitled to consider whether it was likely that any other person—the owner or one of the other casual users—would leave several hundred dollars' worth of methamphetamine in a truck available for common use, in a place where it could easily be reached by a wandering hand.

The evidence was sufficient.

## C.

■ Finally, appellant complains that he was not awarded conduct credits pursuant to Penal Code section 4019 for the 18 days of actual

transportation itself without requiring a finding of specific intent to sell or distribute, because many dealers commonly carried only a small amount of drugs while making deliveries. Thus, if the statute had punished only transportation with intent to sell, the element of intent would often be difficult to prove. (*Rogers*, at p. 136, and fn. 7.)

[10]A short-armed person might have to bend where a long-armed person would not. It is not the bending, but the reaching, which is a suspicious gesture.

presentence custody served.[11] The Attorney General responds that any error was waived by the failure to raise the objection at the hearing.[12]

Custody credits may be waived. (*People* v. *Johnson* (1978) 82 Cal.App.3d 183, 188 [147 Cal.Rptr. 55].) A "*Johnson*-waiver" is commonly employed where the court is hesitant to impose a prison sentence, but a defendant has already served most of the one year maximum permitted in county jail. In such a case, the court may wish to impose enough additional jail time to compel the defendant to recognize the seriousness of his actions, while the defendant wishes to avoid a prison term; by waiving his credits, the defendant submits to additional jail time, but avoids prison.[13]

Such a waiver, however, must be clear, voluntary, and informed. (*People* v. *Correll* (1991) 229 Cal.App.3d 656, 659 [280 Cal.Rptr. 266].)

First, we note that there is no contention that a knowing waiver of the credits is shown on the record. There is no discussion in the probation report of the possibility of waiving credits, and no discussion at the time of sentencing.[14] (Cf. *People* v. *Correll, supra,* in which the defendant first told the probation officer that he was willing to waive credits to avoid prison, and was then "thoroughly questioned" at the sentencing hearing.)

While conceding the silence of the record, the Attorney General cites our recent opinion in *People* v. *Melton* (1990) 218 Cal.App.3d 1406, 1409 [267 Cal.Rptr. 640], for the principle that similar errors must be deemed waived if a timely objection would have permitted correction. We hold that the principle of waived error does not apply.

*People* v. *Melton* involved the defendant's failure to object at sentencing when the court imposed a restitution fine which was required by statute, but which had not been explicitly made a term of his plea bargain—one of a

---

[11]The probation officer's report makes clear that 18 days were actually served June 25-28, 1991, and from August 21 to September 3, 1991.

[12]In the following discussion, we use "waive" or "waiver" in two senses: first, in the sense that a defendant may waive, or give up, his right to the credits; second, that he may waive, or forfeit the right to assert on appeal, any error in the trial court's ruling denying credits.

[13]The waiver is particularly useful in revocation of probation, where the court wishes to punish the probation violation but does not feel that a prison term is appropriate. If the defendant has already served nearly a year in jail, the *Johnson* waiver permits a substantial custodial term to be imposed for the violation without requiring the court to send the defendant to prison.

[14]The probation report does note that defendant expressed willingness to comply with the terms of probation "even if he were committed to up to one year in County Jail." Although the reference to "one year in County Jail" could be read as implying a waiver of credits, we do not consider this sufficient to establish that the possibility of waiving the conduct credits was discussed; after all, it is apparent that defendant did *not* waive his actual time credits.

number of similar cases which had bedeviled appellate courts with their unique combination of essential triviality (because few, if any, of the defendants would ever be expected to actually pay) and the ease with which the problem could have been avoided by alert, conscientious trial courts. (See the ultimate case, *People* v. *Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861], collecting the cases and adopting a modified principle of waived error.) We observed that if the restitution fine had really come as a surprise to defendant, "it would have been a simple matter to bring the issue to the attention of the trial court," which could then have adopted one of several remedies. (*Melton, supra,* 218 Cal.App.3d at p. 1409.)

In general, the doctrine of waived error prohibits a defendant from complaining on appeal about an error which could have been corrected at trial. (*People* v. *Daniels* (1991) 52 Cal.3d 815, 891 [277 Cal.Rptr. 122, 802 P.2d 906]; *People* v. *Green* (1991) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) The doctrine is largely equitable, and it cannot fairly be applied if the error was not clearly visible. That is, unless a defendant is plainly apprised of the court's intention to err, he cannot be expected to object.[15]

In our view, the record supports the conclusion here that the credits should be awarded, and that the failure to mention them at sentencing was a mere omission which appellant could not have anticipated would not be corrected in the written orders. As we noted above, the record reflects no discussion of waiving the conduct credits; at sentencing, the court merely said "Serve 210 days, San Bernardino County Jail, with credit for 18 days served. When do you want to come in . . . ?" Given the clear provisions of Penal Code section 4019 concerning credit, including conduct credit, we find it difficult to assume that the court intended to deprive appellant of conduct credit for some unknown and unrecorded reason. This is not a case in which waiving credits would serve any purpose for either side. Appellant had only 18 days of custody and 8 days of conduct credit, leaving 338 days of jail time available, and the court required only 210 days as a condition of probation. We think it obvious that the court simply forgot to include the custody credits.

We therefore remand for recalculation of the credits to which appellant is entitled. Out of an excess of caution, however, we authorize the trial court to conduct such further proceedings as it may deem necessary if it takes the

---

[15]This is not a case in which silence in the face of arguably reversible error might, if the waived-error rule were not applied, lead to a new trial—a result causing expense and inconvenience to the court and witnesses, while giving defendant a second bite of the apple. Nor did appellant's silence raise the possibility that he might gain any final advantage by the delay. (Cf. *People* v. *Oberreuter* (1988) 204 Cal.App.3d 884 [251 Cal.Rptr. 522], similar to *Melton,* in which the appellate court simply struck the restitution fine.)

position that appellant's waiver of eight days' conduct credit was in fact a condition of the grant of probation, and if, in that case, appellant maintains that he did not knowingly agree to the waiver.

In all other respects the judgment is affirmed.

Ramirez, P. J., and Timlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1993.