Filed 8/18/14  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ALBERT LEE JONES,<br><br>      Defendant and Appellant. | C073440<br><br>(Super. Ct. No. 12F5540) |

A jury found defendant Albert Lee Jones guilty of possessing methamphetamine, transporting methamphetamine, and resisting a peace officer.  After the trial court found true the allegation that defendant was previously convicted of a serious felony and served two prior prison terms, the court sentenced defendant to an aggregate term of 10 years in state prison.

In his opening brief, defendant asserted the trial court erred in:  (1) denying his request for a continuance to allow him to retain private counsel; (2) admitting evidence:

1

he was on parole at the time of his arrest; he fought with peace officers in the jail after he was arrested; and he surrendered a plastic baggie found in his rectum by peace officers; and (3) refusing to instruct the jury that defendant "could legally resist the officers' use of excessive force." Regarding these contentions, we find no prejudicial error.

In a supplemental brief, defendant argued that the recent amendments to Health and Safety Code section 11379 apply retroactively. Health and Safety Code section 11379 criminalizes the transportation of specified controlled substances including methamphetamine. (Stats. 2000, ch. 8, § 5, p. 51; Stats. 2001, ch. 841, § 7, pp. 6870-6871.) Courts had interpreted the term "transport" to include transportation of controlled substances for personal use. (*People v. Rogers* (1971) 5 Cal.3d 129, 134-135; *People v. Eastman* (1993) 13 Cal.App.4th 668, 673-677.) But effective January 1, 2014, the Legislature amended Health and Safety Code section 11379 to define "transports" as "transport for sale." (Health & Saf. Code, § 11379, subd. (c).)

We conclude that under *In re Estrada* (1965) 63 Cal.2d 740, the amendments to Health and Safety Code section 11379 apply retroactively to defendant's benefit. We will reverse the conviction for unlawfully transporting methamphetamine and remand the matter for resentencing.

In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2012, Shasta County Sheriff's Deputies Chris Staup, Levi Solada, and Daniel Smetak were conducting parole, probation, and gang compliance checks. In an unmarked car, but wearing identifying tactical vests, the deputies were patrolling a "high-crime" area in Redding, California, when defendant drove past them. Solada recognized defendant as a parolee; he turned around to follow defendant and confirmed defendant was still on parole.

Defendant pulled into a trailer park and stopped his car. The deputies parked behind defendant, intending to perform a parole compliance check. Staup and Solada

2

approached the driver's side window; Smetak approached the passenger's side. Sitting in the passenger's seat was a woman named Vanessa Pride; she appeared to be nervous. Solada asked defendant if he had anything illegal on his person or in the vehicle and defendant answered, "no." Solada then told defendant they were going to search him as part of a parole search and asked him to step out of the car.

Defendant got out of the car but seemed "fidgety" and "a little agitated." Solada asked defendant to put his hands on top of his head so that Solada could conduct a patsearch. Rather than put his hands on his head, however, defendant set his hands on top of his car, then quickly put them in his front pockets. Concerned defendant might be reaching for a weapon, Solada grabbed defendant's left forearm and pulled defendant's left hand out of his pocket. Defendant began to struggle and pull away from Solada. To prevent defendant from reaching for a weapon with his right hand, Staup grabbed defendant's right arm. Solada instructed defendant to stop resisting and show his hands, but defendant refused to comply.

As defendant struggled with Solada and Staup, defendant's passenger, Vanessa Pride, became "very agitated and almost erratic." Smetak told Pride to stay inside the vehicle and she complied. Smetak then went to assist Solada and Staup with defendant.

When Smetak reached the other deputies, Solada and Staup had defendant facedown on the ground and were still trying to control him. Solada was holding the left side of defendant's upper body; Staup was holding the right side. Defendant was trying to kick the deputies with his legs. Using his baton, Smetak struck defendant twice on the back of his legs. Defendant continued to resist, so again using his baton, Smetak struck defendant on his left ankle. Defendant stopped resisting and the deputies were able to place him in handcuffs.

Handcuffed, defendant resumed his struggle with the deputies rolling from side to side, "tensing up and trying to get up." Accordingly, the three deputies held defendant down while they waited for additional deputies to arrive. After a couple of minutes,

defendant "stopped and was cooperative." The additional deputies arrived shortly thereafter.

Once defendant was secured, Solada found "rolling papers" on the ground near the driver's side door. Defendant said he was trying to get these same papers from his pocket before the struggle began. Solada and Staup then searched defendant's car. Solada noticed a large tear in the driver's seat cushion. Inside that tear, Solada found a bindle of methamphetamine weighing .33 gram. In the pocket behind the passenger seat, Staup found a small silver and black digital scale and numerous small plastic baggies.

Following his arrest, defendant was taken to the hospital to receive medical treatment for two bruises on his calves and a small cut on his "left calf/shin area," which was closed with two staples. Defendant was then cleared by the medical staff and taken to the jail. On the way to the jail, defendant told Solada he "recently started using again and . . . had given a dirty test to his parole officer about a week and a half prior."

Around 11:18 p.m. that same day, Shasta County Correctional Officer Andrew Page was working in the jail, booking inmates. As part of the process for booking defendant into the jail, Page performed a visual strip search of defendant. At the point when Page directed defendant to spread his buttocks for a visual search, defendant became noncompliant. Defendant refused to follow Page's instructions; instead, defendant became "agitated" and started yelling.

Eventually, defendant complied with Page's instructions, and when he did, Page saw what appeared to be a small plastic baggie protruding from defendant's rectum. Defendant immediately turned around and took a "bladed stance at [Page,]" his feet staggered, prepared to fight. Concerned for his safety, Page approached defendant and attempted to restrain him with handcuffs. As Page approached him, defendant reached toward his buttocks, apparently trying to push the plastic baggie farther into his rectum.

In an effort to stop defendant, Page grabbed the arm defendant was using to push the plastic baggie inside his rectum. Defendant immediately became violent.

4

Correctional Officer Joseph Danis grabbed defendant's other arm. Defendant continued to struggle with the officers for two to two and one-half minutes. During the struggle, Danis was struck in the head. Eventually, the officers were able to subdue defendant and get him into a facedown position on a bench and secure him with handcuffs.

Because defendant refused to cooperate with the strip search, Page stood watch over him throughout the night. During the night, defendant said to Page, "I will give it to you." Page immediately gave defendant his *Miranda*[1] rights. Defendant acknowledged his rights and agreed to speak with Page. He then told Page he had half a gram of methamphetamine in the baggie in his rectum, and he was now afraid he had pushed it in too far.

Defendant was subsequently charged with possession of methamphetamine for sale, transportation of methamphetamine, and resisting an officer. The People further alleged defendant was previously convicted of a serious or violent felony and previously served two prison terms. Defendant pled not guilty to all charges and a jury trial was set to begin on January 2, 2013. A settlement conference was held on December 10, 2012, and a trial readiness conference on December 28, 2012.

On January 2, 2013, the first day of trial, defendant moved for a continuance in order to hire private counsel. Appointed counsel for defendant advised the court, "Your Honor, as I think I told the Court and [the prosecution] in chambers yesterday, that [defendant] had made a motion to continue to hire private counsel some weeks ago. That was denied. That was prior to the trial readiness date.

"[Defendant] tells me now he has the funds to hire a private attorney. Apparently he is attempting to hire Ms. Hixon. My understanding is that she has not been retained,

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

but that they have the funds to do that and he would like to do that. So he would like to make a motion to the Court to continue for that purpose."

The People opposed the motion and the trial court noted, "this is not the kind of request that you should be making on the day of trial." The court denied defendant's motion, saying, "This was confirmed for trial last Friday. And other than I know [defense counsel] wanted to run a suppression motion and he made a request to continue on that basis and that was denied as well. That is my understanding. But the People are ready to proceed. This is the day for trial. And so I'm going to deny your request because it's not timely made."

Defendant's appointed counsel argued that at the settlement conference, defendant did move to continue the trial so he could hire private counsel but the motion was denied because defendant did not have the money to hire private counsel. That morning, defendant advised his appointed counsel that he now had the money. The court reiterated its ruling: "Okay. Well, again, I'm going to deny it because it's untimely. You announced ready to go on Friday and now all of the sudden you have the funds. It's questionable in my mind that you would be successful; plus, you have not retained an attorney. So again, I'm denying the request to continue." Appointed counsel again told the trial court that defendant's wife was "in the process of trying to retain Ms. Hixon." The court again denied his request.

Moments later, defendant complained that appointed counsel failed to investigate his case, failed to discuss the case with him, and had done nothing to prepare the case for trial. A *Marsden*[2] hearing was then held, at the conclusion of which the court denied defendant's request to have appointed counsel replaced.

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

6

Later that morning, appointed counsel advised the trial court that defendant's wife had retained private counsel, Mr. Berg, and there would be "some type of money exchange" later that day. The court responded, "Well, it's too late. I'm sorry," noting the case had been pending since August. Defendant argued he had been "trying hard . . . doing jobs for [his] uncle, everything to come up with the money to help with the attorney." Defendant told the court, "We got the down payment . . . I'm just asking one day to continue so he can come in in the morning. That's all, please."

The following colloquy then took place: "The Court: Well, it's not going to result in one day. The only thing I can do is I can contact the home court judge, Judge Ruggiero. Was he the one the previous motion was made to?

"[Appointed Counsel]: Correct. And if Judge Ruggiero would like any input from me, I'm obviously willing to do that, however the court wants to proceed.

"The Court: Let me call Judge Ruggiero and see what he says. Okay. Hang tight for a few minutes."

After speaking with Judge Ruggiero, the trial court again denied defendant's motion for a continuance as untimely. The court noted defendant was arrested on August 8, 2012, and released from custody on October 9, 2012, the case was set for trial, a jury panel was already waiting in the courthouse, and appointed counsel was prepared for trial. Accordingly, the court found there was no good cause to continue the matter.

Following another brief recess, the trial court addressed defendant directly: "I certainly respect your right to have your own counsel represent you. And in the best of all worlds we want to always accommodate that because, you know, you do have your right to be represented by an attorney of your choosing.

"But unfortunately, as I indicated earlier, because of the time that this case has been pending and the fact that you have waited, for whatever reason, until the last minute to hire an attorney. You indicated you were going to hire Ms. Hixon, now I'm told that Mr. Berg is going to be retained at noon today. [¶] . . . [¶] . . . [Appointed counsel] has

7

indicated that he is ready to go forward . . . . [¶] . . . [¶] So if the request had been more timely and there had been more information that there was actually an attorney ready to go and they were ready to proceed today, it might be a different story. [¶] . . . [¶] . . . [appointed counsel] is a good attorney. I'm confident he will do a good job for you and put his best foot forward on your behalf."

A jury was empanelled and six days later, the jury found defendant guilty of transporting methamphetamine and resisting an officer. The jury found defendant not guilty of possessing methamphetamine with the intent to sell, but found him guilty of the lesser included offense of possession. The trial court later found true the allegations that defendant was previously convicted of a strike offense and served two prior prison terms. The trial court then sentenced defendant to an aggregate term of 10 years in state prison.

DISCUSSION

I

*Defendant's Conviction For Transporting Methamphetamine Must Be Reversed*

Defendant contends that under *In re Estrada*, *supra*, 63 Cal.2d at page 740, the recent amendments to Health and Safety Code section 11379 (transportation of methamphetamine) should be applied retroactively to reverse his drug transportation conviction. Defendant argues the jury expressly found he did not intend to sell the methamphetamine found in his car. He says that under amended Health and Safety Code section 11379, his conviction for transportation of methamphetamine must therefore be reversed.

The People agree with defendant's contentions.

Among other things, Health and Safety Code section 11379 provides that any person who "transports" specified controlled substances, including methamphetamine, shall be punished by imprisonment. (Health & Saf. Code, § 11379 [and its predecessor version, Stats. 2001, ch. 841, § 7, pp. 6870-6871].) Courts had interpreted the word "transports" to include transport of controlled substances for personal use. (*People v.*

8

*Rogers*, *supra*, 5 Cal.3d at pp. 134-135; *People v. Eastman*, *supra*, 13 Cal.App.4th at pp. 673-677.) But the Legislature recently amended Health and Safety Code section 11379 to define "transports" as transport for sale. (Health & Saf. Code, §§ 11352, subd. (c), 11379, subd. (c); Stats. 2013, ch. 504, §§ 1-2.) Those amendments took effect on January 1, 2014, after defendant's conviction and sentencing.

The amended statutes do not contain saving clauses which evince the Legislature's intent that the amendments apply prospectively only. According to the author, the purpose of the amendments was to limit felony drug transportation charges to individuals involved in drug trafficking. (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 721 (2013-2014 Reg. Sess.) Apr. 15, 2013, coms.) The amendments make it " 'expressly clear that a person charged with this felony must be in possession of drugs with the intent to sell. Under [the amendments], a person in possession of drugs ONLY for personal use would remain eligible for drug possession charges. However, personal use of drugs would no longer be eligible for a SECOND felony charge for transportation.' " (*Ibid*.) The amendments benefit a defendant by requiring proof of an additional element -- intent to sell -- for a felony drug transportation conviction, and by eliminating criminal liability for drug transportation in cases involving possession for personal use. The parties agree that retroactive application of the amended statute is consistent with the legislative intent of the amendments. The parties also agree the amendments to Health and Safety Code section 11379 took effect when the judgment against defendant was not yet final. (*People v. Rossi* (1976) 18 Cal.3d 295, 304 [the rule applies to any proceeding, that, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it].)

Under the present circumstances, we adhere to the well-established principle that "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed" if the amended statute takes effect before the judgment of conviction becomes

9

final.  (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744, 748.)  The rule articulated in *Estrada* applies to amendments that add to the elements of a crime or enhancement.  (*People v. Vinson* (2011) 193 Cal.App.4th 1190, 1197-1199; *People v. Todd* (1994) 30 Cal.App.4th 1724, 1728-1730; *People v. Figueroa* (1993) 20 Cal.App.4th 65, 68.)  Under *Estrada*, defendant is entitled to the benefit of the amendments to Health and Safety Code section 11379.  (*Vinson*, at pp. 1197-1199; *Todd*, at pp. 1728-1730*; Figueroa*, at p. 68.)  Accordingly, we will reverse the conviction for transporting methamphetamine.

II

*The Trial Court Did Not Abuse Its Discretion And Did Not Violate*

*Defendant's Constitutional Rights In Denying His Request For*

*A Continuance To Obtain Private Counsel*

Defendant contends the trial court abused its discretion and violated his constitutional rights to due process and effective assistance of counsel by denying his request to continue the trial.  In support of his contention, defendant argues that he acted diligently to hire private counsel because he had money to hire private counsel on the day he made his motion.  He also argues the continuance "would have been little or no inconvenience to the parties," because the trial was scheduled to be a short trial and most of the witnesses were law enforcement officers.  We find the trial court acted within its discretion and defendant's constitutional rights were not violated.

Penal Code[3] section 1050 governs continuances.  The moving party must be able to show good cause for the continuance.  (§ 1050, subd. (d).)  Due diligence must be shown in order to meet the requirement of good cause.  (See *People v. Jenkins* (2000) 22 Cal.4th 900, 958.)  On appeal, "[t]he trial court's denial of a motion for continuance is

---

**3**    Undesignated statutory references are to the Penal Code.

10

reviewed for abuse of discretion." (*Id.* at p. 1037.)  The case of *People v. Courts* (1985) 37 Cal.3d 784 is an example of good cause and due diligence.

In *Courts*, our Supreme Court ruled the trial court should have granted the defendant's request for a continuance.  In reaching its decision, the court found the defendant was already in contact with the new attorney he wanted to hire, had made final arrangements, and had already paid a retainer.  (See *People v. Courts*, *supra*, 37 Cal.3d at pp. 787-788, 791-792, 796.)  Thus, the Court found, the defendant "took reasonable and timely steps to create a relationship with private counsel.  His representatives attempted to protect that relationship by moving for a continuance.  Thus, the state's interest in ensuring an expeditious resolution of the case became far less compelling." (*Courts*, at p. 794.)

Here, defendant did not show he acted with due diligence.  Defendant had been out of custody for months prior to trial.  A week prior to trial, defendant said he had no money to retain private counsel.  Defendant appeared at the trial readiness conference and indicated he was ready to proceed to trial.  It was not until the first day of trial that defendant informed the court he had sufficient money to make a "down payment" on a private attorney.  Defendant had not actually hired an attorney, had not actually met with an attorney, and was not even certain which attorney he would be hiring.

The jury panel was waiting in the courthouse; the court, appointed counsel, and the prosecution were ready to proceed.  Without having a retained attorney ready, like in *Courts*, or even giving the court an indication he could fund his defense rather than just make a "down payment," defendant failed to show he had been diligent in hiring private counsel.  Moreover, because defendant had no relationship with private counsel to protect, the state's interest in moving forward with the case was not diminished as it was in *Courts*.  (*People v. Courts*, *supra*, 37 Cal.3d at p. 794.)  Thus, contrary to defendant's argument, there was no requirement for the court to find the delay would have "significantly inconvenienced the court or the parties" in order to deny his request.

11

Defendant failed to meet his burden of proof to show good cause for a continuance. Accordingly, his contention is without merit.

## III

### *Any Error In Admitting Irrelevant Evidence Was Harmless*

Defendant contends the trial court abused its discretion in admitting the following evidence: (1) that he was on parole at the time he was stopped and his car searched; (2) that he fought with correctional officers in the jail; and (3) that he surrendered the plastic baggie he had hidden in his rectum. Defendant contends this evidence was more prejudicial than probative.[4] We conclude any error was harmless.

The trial court has broad discretion to decide which evidence is relevant and whether the probative value of the evidence outweighs its potential for prejudice. (*People v. Lomax* (2010) 49 Cal.4th 530, 581; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) However, the court has no discretion to admit irrelevant evidence. (*People v. Benavides* (2005) 35 Cal.4th 69, 90.) Evidence is relevant if it has any tendency in reason to prove a disputed point that is of consequence to deciding the action. (Evid. Code, § 210.) We review the court's evidentiary rulings for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) We will not reverse a trial court's erroneous evidentiary ruling if that error was harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [before a state error can

---

**4**     Defendant makes reference to the evidence being "cumulative" of other, properly admitted evidence. At trial, however, defendant did not object to any of this evidence as "cumulative." Accordingly, to the extent he is raising that issue on appeal, the issue is forfeited. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 21 [defendant forfeits argument on appeal by failing to make a timely evidentiary objection on specific ground raised on appeal].)

be held harmless, the court must be able to declare that it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

Defendant argues "the prejudicial impact of this evidence," both cumulatively and separately, resulted in a verdict that "likely reflected the jury's fear of violent repeat felons rather than an abiding conviction of [defendant]'s guilt beyond a reasonable doubt." We disagree.[5]

With regard to defendant's conviction for resisting an officer, defendant never claimed he did not resist multiple peace officers as they tried to detain him. On the contrary, his only defense was that the officers used excessive force by hitting him with a baton, resulting in an open wound on his ankle. Thus, there is no reasonable possibility or probability that excluding the evidence defendant was on parole when he was stopped, later fought with peace officers at the jail, and had a plastic baggie hidden inside his rectum would have resulted in a different verdict.

On this record, there is no doubt the error was harmless under *Chapman* or *Watson*. (*Chapman v. California*, *supra*, 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711]; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)[6]

---

[5] Because we reverse defendant's conviction for transporting methamphetamine on other grounds, we address this argument only as it relates to defendant's conviction for resisting a peace officer.

[6] Defendant also contends that admission of this evidence violated his federal and state constitutional rights to due process. Defendant did not, however, object to admission of the evidence on these grounds at trial. Accordingly, he has not preserved the claims for review. (*People v. Earp* (1999) 20 Cal.4th 826, 878.)

IV

*There Was Insufficient Evidence To Support Defendant's Requested Jury Instruction*

Defendant was charged with misdemeanor resisting, delaying, or obstructing a peace officer. Defendant requested the trial court instruct the jury with CALCRIM No. 2670, which provides in relevant part:

"The People have the burden of proving beyond a reasonable doubt that _____ <*insert name, excluding title*> was lawfully performing (his/her) duties as a peace officer. If the People have not met this burden, you must find the defendant not guilty of _____ <*insert name[s] of all offense[s] with lawful performance as an element*>.

"A peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention).

"[¶] . . . [¶]

"[Special rules control the use of force.]"

The People argued there was no evidence the deputies used excessive force in detaining defendant and the trial court agreed. Defendant contends the trial court's ruling was in error and denied him his state and federal due process rights to have the prosecution prove every element of the charged offense beyond a reasonable doubt, denied him the right to present a complete defense, and denied him the right to a fair jury trial. We are not persuaded.

A claim of instructional error is reviewed de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569-570.) "A trial court must give a requested instruction *only* if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) "[U]nsupported theories should not be presented to the jury." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1131; see also *Marshall*, at p. 40 [quoting the same].)

14

We agree with the trial court that the record contains no evidence to support a claim that Deputy Smetak used excessive force in detaining defendant. When Deputy Solada asked defendant to get out of his car, defendant was "fidgety" and "a little agitated." When Solada asked defendant to put his hands on his head, defendant put them on the roof of his car, then immediately reached for his pockets. When two deputies tried to handcuff defendant, defendant fought them so hard, a third deputy had to intervene. The three were able to get defendant on the ground, but he continued to fight with them; they were unable to handcuff him. Defendant continued fighting with the deputies despite their repeated demands that he comply.

Still on the ground, defendant began kicking at Solada and Staup; only then did Smetak take out his baton. Smetak struck defendant twice on his calves. Smetak stopped to determine whether those strikes were effective in subduing defendant; they were not, so he struck defendant a third time, this time on the ankle. Only then did defendant comply sufficiently with the officers' instructions that they were able to handcuff him.

At trial, Smetak testified he used the baton in the manner he was taught, and the baton was the least force necessary to subdue defendant. Defendant offered no evidence to the contrary. An officer may use reasonable force to overcome resistance to an arrest. (*People v. Curtis* (1969) 70 Cal.2d 347, 356-357.) Accordingly, on this record, we agree with the trial court: there was no evidence that Smetak used anything other than reasonable force when trying to subdue defendant. There was no error.

## DISPOSITION

The judgment is reversed as to the conviction for unlawfully transporting methamphetamine. The judgment regarding sentencing also is vacated, and the matter is remanded to the trial court for resentencing in accordance with this opinion. The trial court is directed to obtain a current probation report that includes information about defendant's conduct while incarcerated during the pendency of this appeal.

In all other respects, the judgment is affirmed.

15

                                  ROBIE                    , J.


We concur:


        RAYE                , P. J.


        BUTZ                , J.