Filed 2/24/15  P. v. Lucero CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060275 |
| v. | (Super.Ct.No. RIF1300482) |
| JESUS MANUEL LUCERO, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez and Irma Poole Asberry, Judges.*  Reversed and remanded with directions.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\*        Judge Hernandez denied defendant's original motion for severance.  Judge Asberry denied his renewed request for severance.  Judge Asberry also denied his motion for new trial as untimely and denied his request for a continuance so that the motion for new trial could be heard.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Kristine A. Gutierrez and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Someone broke into a mobilehome; at least as far as the police were told, no property was taken. Defendant Jesus Manuel Lucero was identified as the culprit because his fingerprints were found at the scene. When arrested, defendant was found to be in possession of a small quantity of methamphetamine.

Defendant was charged with first degree burglary (Pen. Code, §§ 459, 460) and simple possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The trial court denied his motion to sever the charges. Defendant was present for the first two days of trial but then went missing. The trial court granted a one-day continuance, based on defense counsel's claim that defendant was in the hospital. However, when defense counsel failed to produce any written documentation to support the claim, it proceeded with the trial. A jury found defendant guilty as charged.

At sentencing, defense counsel attempted to bring a motion for new trial on the ground that defendant had not been knowingly and voluntarily absent from trial, but the trial court denied the motion as untimely. Defendant was sentenced to a total of two years eight months in prison, along with the usual fines, fees, and conditions.

In this appeal,[1] defendant contends:

1. The trial court erred by denying defendant's motion to sever.

2. The trial court erred by proceeding with the trial, because there was insufficient evidence that defendant was knowingly and voluntarily absent.

3. The new trial motion was actually timely, and thus the trial court erred by denying it.

4. Defense counsel rendered ineffective assistance by conceding that the new trial motion was untimely.

5. Assuming the new trial motion was untimely, defense counsel rendered ineffective assistance by failing to bring the motion in a timely manner.

We agree that the new trial motion was, in fact, timely. While defense counsel forfeited this error by mistakenly conceding that it was untimely, we also agree that this constituted ineffective assistance. We reject defendant's other contentions. The appropriate appellate remedy is to remand for reconsideration of defendant's new trial motion, with directions to reinstate the judgment if the motion is denied.

---

[1] Defendant has also filed a related petition for writ of habeas corpus (case No. E061452). We ordered the writ petition considered with (but not consolidated with) this appeal for the purpose of determining whether an order to show cause should issue. We will rule on the petition by separate order.

# I

# FACTUAL BACKGROUND

Victim Irene Mattson lived in a mobilehome park for senior citizens in Corona. On June 29 or 30, 2012, she went to stay with friends over the July 4 holiday.

On July 5, Irene's adult son, Gaylen Mattson, stopped by to check on the mobilehome. He found that her car was missing. One of the windows of the home was open; the screen was ripped, and the window was off its track. Inside the home, Gaylen found that a key to the car, which was normally kept in a cup or container in the kitchen, was missing. Near the damaged window, a jewelry box, which normally contained a piece of jewelry, was lying empty on the floor. None of the other items in the home (which included a television and a boom box) appeared to have been disturbed.

Later on July 5, a police officer collected fingerprints from the damaged window and from the jewelry box.[2] Gaylen did not tell him that anything had been taken from inside the home.

In October 2012, Teresa Ybarra, a fingerprint examiner with the Riverside County Sheriff's Department, analyzed the fingerprints. One fingerprint from the window (window print) and one fingerprint from the box (box print) were of sufficient quality to make a comparison.

---

[2]     To assist us in understanding the fingerprint testimony, we have had all of the relevant exhibits transmitted to us. (See Cal. Rules of Court, rule 8.224(d).)

Using only the box print, Ybarra queried three separate databases: a national FBI database, requesting the 12 most similar candidates; a state Department of Justice (DOJ) database, requesting the 10 most similar candidates; and a local database, requesting the 3 most similar candidates, for a total of 25 candidates.

Ybarra then personally compared the box print to these 25 candidates. The only match she found was a set of prints from the FBI (FBI set), under defendant's name and birthdate.

Next, Ybarra queried the local database again, this time using defendant's name and birthdate; she found a set of prints that the automated search had missed (local set). She determined that the right thumb from the box print matched the local set.

Ybarra also had a set of prints that had been taken from defendant when he was booked (booking set). She determined that the right thumb in the local set matched the booking set. She also determined that the right ring finger from the window print matched the booking set.

Finally, after defendant was arrested, Ybarra personally rolled his fingerprints (inked set). Both the right thumb and right ring finger in the booking set matched the inked set.

Ybarra concluded that it was defendant who left the fingerprints that were found at the scene. Irene and Gaylen did not know defendant.

On November 29, 2012, defendant was arrested at his home. In his wallet, a booking officer found a small baggie containing what appeared to be methamphetamine. Defendant spontaneously stated, "[J]ust throw it away."

Testing showed that the substance in the baggie weighed 0.20 grams and contained methamphetamine. There was expert testimony that this was approximately two doses.

II

SEVERANCE

Defendant contends that the trial court erred by denying his requests to sever the burglary count from the methamphetamine possession count.

A.      *Additional Factual and Procedural Background*.

Before trial, defense counsel filed a motion to sever. The prosecution filed a written opposition. After hearing argument, the trial court (per Judge Hernandez) denied the motion. It explained:

"There's a couple ways to look at it. One of them is are you trying to join a weak case with a strong case to buck up . . . your weak case? I don't see that. They are both equally either strong or not strong, but they are both equal. One is a fingerprint case with a confession. The other one is finding dope at the booking.

"Your point that it's five months older is true, but they didn't solve the case right away. When it was finally solved and they arrested him, that's when he had the dope. So it's kind of simultaneous. I don't see any prejudice here."

6

In a written motion in limine, defense counsel requested again that the counts be severed. The trial court (per Judge Asberry) denied the request.

B.     *Analysis*.

By statute, multiple counts may be tried together as long as they are either "connected together in their commission" or "of the same class." (Pen. Code, § 954.) However, even when these "threshold requirements" are met, "[s]everance may . . . be *constitutionally* required if joinder of the offenses would be so prejudicial that it would deny a defendant a fair trial. [Citation.]" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1243-1244.)

"'"Refusal to sever [charges] may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.'"' [Citation.] Regarding cross-admissibility, however, '[Penal Code] section 954.1 expressly provides that "where two or more accusatory pleadings charging offenses of the same class of crimes or offenses have been consolidated, evidence concerning one offense or offenses *need not* be admissible as to the other offense or offenses before the jointly charged offenses may

7

be tried together before the same trier of fact." [Citation.] Thus, "cross-admissibility is not the sine qua non of joint trials."' [Citation.]

Moreover, ' . . . the issue of cross-admissibility "is not cross-admissibility of the charged offenses but rather the admissibility of relevant evidence" that tends to prove a disputed fact. [Citations.]' [Citation.] Thus, . . . '"complete (or so-called two-way) cross-admissibility is not required. In other words, it may be sufficient, for example, if evidence underlying charge 'B' is admissible in the trial of charge 'A' — even though evidence underlying charge 'A' may not be similarly admissible in the trial of charge 'B.'"' [Citation.]" (*People v. Capistrano* (2014) 59 Cal.4th 830, 848-849.)

""'[I]f evidence underlying the offenses in question would be 'cross-admissible' in separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses." [Citations.] . . . .' [Citation.]" (*People v. Scott* (2011) 52 Cal.4th 452, 470.)

"[E]ven when a trial court's denial of severance was not an abuse of discretion at the time it was made, we must reverse the judgment on a showing that joinder actually resulted in ""'gross unfairness'"" amounting to a denial of fair trial or due process. [Citation.]" (*People v. Myles* (2012) 53 Cal.4th 1181, 1202.)

Here, at least when Judge Hernandez first ruled on the motion to sever, the crimes were connected in their commission, and evidence of defendant's possession of methamphetamine was cross-admissible in the burglary prosecution.

8

"[T]he requirement of section 954 that offenses be 'connected together in their commission' may be satisfied even though '*the offenses charged "do not relate to the same transaction and were committed at different times and places . . . against different victims*."'  [Citations.]"  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1218.)  In *Alcala*, the Supreme Court held that crimes can be connected by "intent or motivation . . . ."  (*Id*. at p. 1219.)  Specifically, in the case before it, the five charged murders were connected by "the intent or motivation to brutally kill young females . . . ."  (*Id*. at p. 1219; see also *People v. Kemp* (1961) 55 Cal.2d 458, 462, 471, 476 [murder, kidnapping, and rape charges involving three victims over two years were connected by the motive of "satisfaction of appellant's sexual desires"].)

Here, at the preliminary hearing, the arresting officer had testified, without objection, to defendant's admission that, at the time of the burglary, "he was having a drug problem and he was desperate."  Thus, it appeared that the motive for the burglary was the same as for the possession of methamphetamine — namely, to use methamphetamine.  For similar reasons, the evidence of methamphetamine possession was cross-admissible to show defendant's motive for the burglary.

As defendant points out, between his first and second requests for severance, the prosecution filed its trial brief, which did not mention his statement that he was desperate and had a drug problem.  Defendant therefore argues that this statement that "had all but disappeared from the prosecution's case . . . ."  The purpose of a trial brief, however, is not to list all the evidence that will be introduced at trial.  Thus, when Judge Asberry

9

ruled on the second request for severance, the crimes were still connected in their commission, and cross-admissibility still existed.

Ultimately, however, the prosecution did not actually introduce any of defendant's Mirandized statements at trial. Without his statement, the mere fact that methamphetamine was found on his person some five months after the burglary would not have been admissible to show motive. (Compare *People v. Felix* (1994) 23 Cal.App.4th 1385, 1392-1394 [defendant's admission that he committed burglary to get money for heroin was admissible to show motive] with *People v. Cardenas* (1982) 31 Cal.3d 897, 906-907 [fact of defendant's narcotics addiction was not admissible to show motive for attempted robbery].)

We may assume, without deciding, that this meant that the crimes were no longer connected in their commission. However, because the trial court's ruling was correct when made, we can reverse only if joinder actually resulted in the denial of a fair trial. (*People v. Myles*, *supra*, 53 Cal.4th at p. 1202.)

"Charges of possession and transportation of narcotics are not inherently inflammatory." (*People v. Breault* (1990) 223 Cal.App.3d 125, 134 [Fourth Dist., Div. Two].) Here, defendant was found in possession of just two doses of methamphetamine, with no evidence of intent to sell. This was almost as non-inflammatory as evidence of a drug crime can possibly be.

10

We agree with the trial court that the burglary count was not markedly weaker or stronger than the drug count. The evidence of possession of methamphetamine was almost incontestable. Indeed, defendant does not argue otherwise. With respect to the burglary, however, he argues that identity and intent were weak points in the prosecution's case.

Defendant's fingerprints positively identified him as the burglar. As defendant notes, an automated search of the local database failed to turn up his prints.[3] However, Ybarra was able to find the local set using his name and date of birth. More important, she testified that the local set matched the booking set, the booking set matched the inked set (which she personally took from defendant), and the prints from the scene matched not only the local set but also the booking set.

Defendant argues that the evidence of intent to steal was equivocal, because "[n]othing was taken from inside the mobile home." Actually, the evidence at trial showed that a key to the victim's car was missing[4] (as was the car itself). It also showed that the jewelry box on which defendant's fingerprint was found normally contained a piece of jewelry. The very fact that defendant evidently handled a jewelry box —

_____

[3] As defendant also notes, there was also no match in the DOJ database. However, there was no evidence that defendant's prints were even in the DOJ database.

[4] The evidence at the preliminary hearing did not show that the key was missing. However, it did include defendant's Mirandized statement that he entered the home because "he was looking for something to eat." For purposes of Judge Hernandez's ruling, this was ample evidence of intent to steal.

whether empty or full — and then discarded it on the floor, was some evidence of intent to steal.[5] There was no evidence that defendant had any *other* motive to break in to a total stranger's home. Thus, in closing argument, defense counsel did not even argue that there was insufficient evidence of intent to steal. Quite the contrary, he conceded, "Somebody burglarized that house . . . ."

We therefore conclude that the trial court properly denied defendant's severance requests, and that its denial of a severance did not render the ensuing trial unfair.

### III

### DEFENDANT'S ABSENCE FROM TRIAL

A.      *Additional Factual and Procedural Background.*

1.      *Proceedings before trial.*

Before trial, on three separate occasions, defendant failed to appear, resulting in the issuance of a bench warrant (later quashed). On Monday, September 9, 2013, the trial court warned him that, if he failed to appear for the first day of trial on Thursday, September 12, it would issue a warrant again.

---

**5**      In the probation report, defendant claimed that a female friend told him that she lived in the mobile home and she had forgotten her key. To help her, defendant opened the window, climbed inside, and then let her in. He claimed he did not touch anything; he could not explain how, in this scenario, his fingerprint came to be on the jewelry box.

2.      *Defendant's absence from trial*.

On the first two days of trial — Thursday, September 12 and Friday, September 13 — defendant was present.  The jury was sworn, both sides delivered opening statements, and five witnesses testified.

On Monday, September 16, 2013, defendant failed to appear again.  His trial counsel requested a one-day continuance.  He represented, based on what defendant had told him on the phone, that defendant was in the hospital.  Defendant was in "extreme pain"; he had to urinate every five or ten minutes, and he was urinating blood.  He "believe[d] he ha[d] some sort of infection."

The trial court granted a continuance, finding "good cause on the grounds of the reported medical unavailability of the defendant."  However, it added:

"I will indicate, [defense counsel], that on tomorrow morning I do expect to have Mr. Lucero here.  I want you to contact him and let him know that I will also be expecting him to bring with him medical documentation confirming that he was hospitalized today and receiving treatment.

"In the event he finds that he is not able to be present tomorrow because of medical unavailability, I will expect that he has provided your office and also to the [prosecutor] a medical documentation to confirm that.  And that is not just some statement from a piece of medical literature.  I want something from the treating physician to show that he is medically unable to appear in court."

13

On Tuesday, September 17, 2013, defendant did not appear. Trial counsel represented that he had tried to reach defendant by phone, without success. He requested a further continuance.

The trial court asked if he had told defendant about its order that he provide medical documentation. Trial counsel responded, "I am going to assert that that is privileged."

The trial court denied a continuance. It stated: "The Court is required in deciding whether it will proceed with trial in the absence of a defendant to first determine if there is evidence of his involuntary absence so that we are making sure that all of his constitutional rights are being protected. In this particular instance I have no evidence that Mr. Lucero is involuntarily absen[t] from court. I did make clear the type of information that I would need to have in order to get that." It then made a finding "that Mr. Lucero has voluntarily absented himself."

It instructed the jury: "Ladies and gentlemen, Mr. Lucero is not present with us today. You're not to speculate about the reason that he is not present. You must completely disregard the circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations."

Four more witnesses testified. Both sides presented closing argument. The jury was instructed and began deliberating.

On Wednesday, September 18, 2013, defendant still did not appear. The trial court asked:

"THE COURT: . . . [¶] [Defense counsel], are you expecting Mr. Lucero to be present this morning with us?

"[DEFENSE COUNSEL]: I'm not."

After only brief further deliberations, the jury returned its verdict.

        3.    *Defendant's new trial motion*.

Sometime over the next two weeks, defendant turned himself in. The public defender declared a conflict, so new counsel was appointed. Sentencing was set for October 25, then continued to November 22, then further continued to December 13.

On December 11, defendant's posttrial counsel submitted a motion for new trial. The clerk, however, marked it "untimely," declined to file it, and lodged it instead.

At the sentencing hearing on December 13, the trial court indicated that it had not read the motion because it was untimely. Defense counsel conceded, "I know the motion is untimely." He explained that he had had to familiarize himself with the file, to investigate, and to do research; meanwhile, he had "been going to and from doctors" to deal with an injured knee. He requested a one-week continuance "so we can at least hear the motion . . . ."

The trial court denied a continuance and proceeded to sentence defendant.

4.      *What defendant's new trial motion would have shown.*

Defendant's new trial motion asserted that, on Monday, September 16, defendant had phoned his then-counsel; defendant said he was in the hospital, in great pain, and urinating blood every five to ten minutes.

Later that day, trial counsel relayed to defendant the trial court's order that, if he was not going to be in court on Tuesday, September 17, he had to fax medical documentation to his counsel.  Defendant did in fact fax such documentation to his counsel.

On Wednesday, September 18, while the jury was deliberating, defendant told his trial counsel that he had faxed the documentation.  Trial counsel looked for it but could not find it.

"A few hours after the verdicts," trial counsel found three pages of medical documentation on the front desk at his office.  It did not have a cover sheet; he believed that was why it had not been delivered to him sooner.

These asserted facts were not supported with any affidavit or declaration.  However, four pages of medical documentation were attached to the motion.  Two of these pages were practically identical hospital after-care forms; they were both dated September 16, 2013, and they both had defendant's name and date of birth, but they had been filled out differently by two different staff members.  One form indicated "No Work/School" on September 17, 2013.  The other form had no such limitations, though it did indicate that defendant should see his own doctor within 48 hours.

16

The other two pages were hospital discharge instructions, numbered pages 3 and 4, stamped September 16, 2013 at 11:58 p.m. and bearing defendant's name. They indicated that defendant had been diagnosed with "abdominal pain, uncertain cause" and should see a specified doctor within two days. (Capitalization altered.) They also stated, "Your condition does not seem serious now . . . ."

Also attached to the motion was a report by a defense investigator, summarizing his interview of defendant. Defendant told the investigator that he went to the hospital with "stomach problems." While there, he spoke to his trial counsel on the phone. Trial counsel told him to fax a doctor's note. He tried to get a doctor's note, but he was told that the doctor was too busy. "[H]e spoke with his attorney and explained his situation." Trial counsel told him he would get a continuance. Around 7:30 a.m., however, defendant did fax trial counsel a "note" saying that he had been admitted to the hospital. The next day, trial counsel told defendant he had not been able to get a continuance and defendant had been found guilty.

B. *The Trial Court's Decision to Proceed with the Trial*.

Defendant contends that the trial court's decision to proceed with the trial was erroneous, because it was not supported by sufficient evidence when made.

"'A criminal defendant's right to be personally present at trial is guaranteed under the federal Constitution by the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. It is also required by section 15 of article I

17

of the California Constitution and by [Penal Code] sections 977 and 1043.' [Citation.]" (*People v. Blacksher* (2011) 52 Cal.4th 769, 798-799, fn. omitted.)

"The right to be present may be waived, however. [Citations.] Waiver may be express or implied. [Citation.]" (*People v. Concepcion* (2008) 45 Cal.4th 77, 82.) "[A] defendant impliedly waives the right of presence by voluntarily absenting himself from trial . . . ." (*Id*. at pp. 82-83, fn. 7.)

"A trial court abuses its discretion . . . if it proceeds with the trial without an adequate showing that the defendant's absence is a knowing and voluntary one. [Citation.] Before it can make a finding that a defendant's absence is knowing and voluntary, a trial court must make reasonable inquiry and have 'sufficient facts before it.' [Citation.] The defendant must be given a 'full opportunity to explain his absence.' [Citation.] . . . 'Mere absence standing alone is purely equivocal.' [Citation.]" (*People v. Disandro* (2010) 186 Cal.App.4th 593, 602 [Fourth Dist., Div. Two].)

When, as here, the trial court has two opportunities to rule on the voluntary absence issue — once when the defendant is absent and again when he or she returns — we normally review only the second ruling. "A crucial question must always be, 'Why is the defendant absent?' This question can rarely be answered at the time the court must determine whether the trial should proceed. Consequently, in reviewing a challenge to the continuation of a trial . . . the court's initial determination is not conclusive in that, upon the subsequent appearance of the defendant, additional information may be presented which either affirms the initial decision of the court or demands that defendant

be given a new trial.  It is the totality of the record that must be reviewed in determining whether the absence was voluntary." (*People v. Connolly* (1973) 36 Cal.App.3d 379, 384-385 [Fourth Dist., Div. Two].)

Thus, for example, in *People v. Shelby* (1980) 108 Cal.App.3d Supp. 7, when the defendant failed to appear, the trial court found that he was voluntarily absent and proceeded with the trial. (*Id*. at p. 10.)  The defendant was found guilty and sentenced in absentia. (*Id*. at pp. 10-11.)  The defendant filed a notice of appeal.  However, he then filed a "'limited withdrawal'" of the appeal along with both a new trial motion and a motion to vacate the sentence.  The trial court denied the new trial motion as untimely; it refused to hear the motion to vacate because the appeal was pending. (*Id*. at p. 12.)

The appellate court held that, when the trial court determined to proceed with the trial, it failed to make an adequate inquiry into why the defendant was absent. (*People v. Shelby*, *supra*, 108 Cal.App.3d Supp. at pp. 11-12.)  Nevertheless, the defendant was not necessarily entitled to reversal.  Rather, the appropriate appellate remedy was to remand for a new hearing:  "At this point from the record on appeal we do not know if defendant voluntarily was absent from the trial court. . . .  [T]he trial court should make that determination after defendant is given full opportunity to explain his absence and the People are given full opportunity to contest any facts brought forward by the defendant. Even though we hold that the trial court's finding of voluntary absence from the trial is unsupported, it may be, after a hearing, that the court will find a waiver of the right to be present at the trial and/or sentencing hearing." (*Id*. at p. 13.)

19

Likewise, here, even assuming the trial court's initial finding that defendant was voluntarily absent was correct when made, it was required to reconsider that finding when defendant filed his motion for new trial. And contrariwise, even assuming the trial court's initial finding was erroneous, as long as defendant's motion for new trial was properly denied, the error was harmless and the judgment may properly stand.

C.     *The New Trial Motion.*

In the proceedings below, both sides (as well as the trial court) accepted the clerk's determination that the motion for new trial was untimely. Similarly, in the original round of briefing, both sides assumed that the motion was untimely.

We asked the parties to file supplemental briefs addressing whether the motion was, in fact, untimely. Defendant then argued that the motion was actually timely and thus the trial court erred by denying it. He also argued that his trial counsel rendered ineffective assistance by agreeing that the motion was untimely. The People argued that the motion was untimely because the trial court had evidently set a deadline for filing it. They also argued that any error in denying the motion as untimely, as well as any ineffective assistance, were harmless because the motion lacked merit.

Penal Code section 1182, as relevant here, provides: "The application for a new trial must be made and determined before judgment . . . ." A motion for new trial does not have to be in writing; it may be oral. (*People v. Simon* (1989) 208 Cal.App.3d 841, 847.) As far as we have been able to determine, there is no state or local rule requiring that a new trial motion in a criminal case be made at any particular time before judgment.

We may assume, without deciding, that a trial court has the inherent power to set a deadline, earlier than the date of judgment, for making a new trial motion. Even if so, there is no indication that the trial court in this case exercised this power. The minute orders continuing the sentencing hearing do not mention any such deadline. At the sentencing hearing, the trial court reviewed the history of the continuances it had granted in the case, but it did not claim to have set any deadline while doing so.

Accordingly, on this record, the trial court erred by finding that the motion was untimely. Posttrial counsel, however, forfeited the error by acquiescing in the trial court's failure to hear the motion. (*People v. Braxton* (2004) 34 Cal.4th 798, 814.) This is not a case in which defense counsel "did all that could reasonably be expected or required under the circumstances to obtain a hearing of his new trial motion." (See *ibid*.) Posttrial counsel not only failed to point out the error — he affirmatively conceded that the motion was untimely.

As already mentioned, however, defendant contends that this constituted ineffective assistance of counsel. "In order to establish a claim of constitutionally deficient performance by counsel, defendant must establish that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to defendant. [Citation.]" (*People v. Grimes* (2015) 60 Cal.4th 729, 773.) "[A] '"reasonable probability is defined as one that

undermines confidence in the verdict."'  [Citation.]" (*People v. Carrasco* (2014) 59 Cal.4th 924, 982.)

"'When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation.'  [Citations.]" (*People v. Grimes*, *supra,* 60 Cal.4th at p. 773.)  This is one of those rare cases in which we cannot imagine any satisfactory explanation for counsel's default.  The law on the timeliness of new trial motions is clear.  And we see no tactical purpose to be gained from conceding that the motion was untimely.  If the motion was worth bringing at all, it was worth insisting on it being heard.

Thus, we turn to whether the default was prejudicial.

On one hand, we cannot say that the new trial motion had to be denied as a matter of law.  It made at least a prima facie showing that defendant's absence from trial was not knowing and voluntary.  It indicated that on Monday, September 16, defendant did not appear because he was at the hospital and in no condition to attend trial.  On Tuesday, September 17, defendant did not appear because he had been given an aftercare form instructing him not to go to work or school that day.  While it did not specifically say he should not go to court, that was certainly a reasonable inference.  Moreover, defendant had, in fact, complied with the trial court's order to submit "medical documentation" by faxing it to his defense counsel, but the documentation had unfortunately failed to reach his counsel in a timely manner because it did not have a cover sheet.  On Wednesday,

September 18, defendant did not appear because his trial counsel had assured him (sometime between September 16 and 17) that he would get a continuance.

Admittedly, there was one big problem with all of this — none of these facts were stated under penalty of perjury. The trial court, however, had discretion to overlook this lacuna. Defense counsel had signed the motion in which all of these representations were made. "Statements of a responsible officer of the court are tantamount to sworn testimony. [Citation.]" (*People v. Wolozon* (1982) 138 Cal.App.3d 456, 460, fn. 4.) "[A]ttorneys are officers of the court, and '"when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."'" [Citation.]" (*People v. Mroczko* (1983) 35 Cal.3d 86, 112, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

On the other hand, we cannot say that the new trial motion had to be *granted* as a matter of law. While the trial court was not *required* to deny the motion on the ground that it was not supported by affidavits or declarations, certainly it had *discretion* to do so. (E.g., *People v. Beeler* (1995) 9 Cal.4th 953, 1004-1005; see also *People v. Laudermilk* (1967) 67 Cal.2d 272, 286 ["[W]e intimate no rule ascribing probative value to such statements [by defense counsel] in all instances . . . ."]; see also Evid. Code, §§ 300, 710.) Indeed, it could reasonably question whether the new trial motion deliberately avoided using declarations to sidestep the commission of perjury.

The new trial motion also raised significant questions of credibility:

1. As the trial court was well aware, defendant had a history of failing to appear. On September 9, he had been warned that, if he did not show up on September 12, the trial court would issue a warrant. While he did show up on September 12, and September 13, to boot, he went missing again on the very next court day.

2. Defendant had told trial counsel that he was urinating blood. According to his discharge instructions, however, his diagnosis was abdominal pain. Defendant merely told the defense investigator that he had "stomach problems."

3. Defendant had supposedly faxed three pages of unidentified "medical documentation" to trial counsel. The motion included four pages of medical documentation — not three — and they did not have any fax header stamp. Moreover, two pages of the discharge instructions were missing.

4. The motion did not explain why there were two different after-care forms. One indicated that defendant should not go to work or school on September 17; the other lacked any such restriction. The after-care form that *lacked* this restriction was *consistent* with the discharge instructions, in that both forms told defendant to follow up with a doctor within the next two days. The after-care form that *had* the work/school restriction was *inconsistent* with the discharge instructions.

5. Defendant did not appear on Wednesday, September 18, supposedly because he was confident that his trial counsel had obtained a continuance. Nevertheless, on

September 18, after the trial was over, he admittedly phoned trial counsel "and asked him if the trial had been continued . . . ."

The trial court could have denied the new trial motion simply because it was not credible. "When assessing evidence produced in support of a new trial motion, the trial court may consider its credibility as well as its materiality. [Citation.]" (*People v. Avila* (2004) 117 Cal.App.4th 771, 782.)

To summarize, there was substantial evidence that defendant was not knowingly and voluntarily absent. Moreover, while there were grounds for suspicion, there was no *conclusive* proof that any of the facts stated in the motion were false. As a result, there is a reasonable probability — sufficient to undermine our confidence in the outcome — that if the trial court had actually considered the motion, it would have granted it. However, the trial court could also reasonably have denied the motion.

Under these circumstances, we must reverse the judgment, but only conditionally. We will remand with directions to the trial court to hold a hearing on defendant's new trial motion. If it grants the motion, it may proceed accordingly. However, if it denies the motion, it must reinstate the judgment.

IV

DISPOSITION

The judgment is reversed, subject to the following conditions and directions. On remand, the trial court shall hold a hearing on defendant's new trial motion. If it grants

25

the motion, it shall order a new trial. If it denies the motion, it shall reinstate the judgment.

As we are reversing due to posttrial counsel's ineffective assistance, the clerk of this court is directed to give the required notice to the State Bar and to posttrial counsel. (Bus. & Prof. Code, § 6086.7; Cal. Rules of Court, rule 10.1017.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ_____
P. J.

We concur:


HOLLENHORST_____
J.


McKINSTER_____
J.

26